UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,
*ex rel.* TERESA ROSS

                Plaintiff,

      v.                                                                    12-CV-0299(S)

GROUP HEALTH COOPERATIVE, INDEPENDENT
HEALTH CORPORATION, DxID LLC, DR. JOHN
HAUGHTON, BETSY GAFFNEY, & INDEPENDENT
HEALTH ASSOCIATION,

                Defendants.
_____

**UNITED STATES' MOTION TO PARTIALLY INTERVENE FOR GOOD CAUSE**

      The United States of America, through undersigned counsel, and pursuant to 31 U.S.C. § 3730(c)(3) and Federal Rule of Civil Procedure 24(b), respectfully requests that the Court permit the United States to intervene for good cause in this *qui tam* action against Independent Health Corporation, Independent Health Association (collectively "Independent Health" or "IH"), DxID LLC ("DxID"), Betsy Gaffney, and Dr. John Haughton (collectively "Defendants") for violating the False Claims Act (FCA), 31 U.S.C. §§ 3729-33. The United States is not seeking leave to intervene against defendant Group Health Cooperative (GHC) because the United States and GHC have agreed to a settlement in principle and are in the process of finalizing that settlement. The FCA provides that even after electing not to intervene in an FCA case, the United States "may nevertheless . . . intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3). As set forth below, good cause exists in this case.

All of the factors that Courts consider in deciding motions by the Government for leave to intervene in FCA cases for "good cause" support the Government's motion. First, the public interest -- which courts have recognized as being "of paramount importance" -- will be served by allowing the Government to participate in this case, which concerns allegations of fraud against the Medicare program, one of the largest taxpayer-funded programs administered by the Federal Government. Second, since the Government notified the Court seven months ago that it was not intervening "at this time" the United States has worked diligently to settle this matter. This process has resulted in a settlement in principle with GHC, and the exchange of significant factual information and discussion of the parties' legal positions with counsel for Independent Health, DxID and Dr. Haughton.[1] These discussions have clarified the strength of the Government's case and confirmed its view that intervention is appropriate. Third, relator's interests will be furthered rather than harmed by the Government's intervention as evidenced by the fact that relator has indicated her support for this motion. Fourth, permitting the Government to intervene will not unduly prejudice Defendants because they have not filed an answer, and discovery has not started. Nor can Defendants claim to be unfairly surprised by the United States' intervention, because undersigned counsel informed defense counsel beginning in July 2019 of the likelihood that the United States would seek authority to intervene if settlement negotiations did not lead to a resolution.

---

[1] The same counsel represent Independent Health, its subsidiary DxID, and Dr. Haughton, who is currently an employee of Independent Health. Counsel for these entities are referred to hereafter as "counsel for Independent Health."

2

Given that all of the relevant factors for determining the existence of "good cause" under 31 U.S.C. § 3730(c)(3) support the United States argument, the government respectfully requests that the Court grants its motion for leave to intervene. As noted above, Relator supports the United States intervention. Counsel for Defendants have not yet indicated whether they will oppose this motion.

## BACKGROUND

Relator Theresa Ross ("Relator") filed this *qui tam* action under the False Claims Act in the United States District Court for the Western District of New York on April 11, 2012. Dkt. No. 1. Relator filed an amended complaint on February 5, 2016. Dkt. No. 32. In her complaints, Relator alleged that defendants GHC and Independent Health submitted false claims to Medicare in connection with the Medicare Advantage program (also known as Medicare Part C). Under this program, the Center for Medicare and Medicaid Services ("CMS") pays private insurers like GHC and Independent Health a set amount "per member per month" to cover the actual costs of each beneficiary's care. These monthly amounts are determined by CMS through a complicated formula that takes into account the beneficiaries' diagnoses from a previous year. The process of determining the monthly payment amounts is known as "risk adjustment." Relator alleged that GHC and IH knowingly submitted improper diagnoses to CMS as part of the risk adjustment process in order to increase their reimbursement from CMS.

Relator further alleged that both GHC and IH hired DxID (an IH subsidiary), to review beneficiary records to find additional diagnoses to submit to CMS, and that DxID caused GHC and IH to submit false claims by identifying diagnoses for submission that were not supported by the medical record. Finally, relator alleged that Betsy Gaffney, the CEO of DxID, and Dr. John

Haughton, then a DxID consultant, were liable under the FCA as well. Based on these allegations, Relator asserted three substantive FCA claims, violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G), as well as claims under 31 U.S.C. § 3729(a)(1)(C) for conspiracy to violate the FCA.

During the time that this matter was under seal, the United States investigated relator's allegations. The government interviewed current and former employees of GHC, Independent Health and DxID, reviewed thousands of documents produced by Defendants in response to subpoenas served by the Department of Health and Human Services Office of Inspector General, and examined current and former employees of Independent Health, DxID, and GHC pursuant to Civil Investigative Demands.

On May 17, 2019, this Court issued an Order, Dkt. No. 59, stating that it would not extend the deadline for the United States to make an intervention decision beyond June 21, 2019. At that time, the United States was already engaged in settlement negotiations with GHC, and Independent Health had indicated a strong interest in conducting such negotiations as well. In an effort to further those discussions, Government counsel met with counsel for Independent Health at the United States Attorney's office in Buffalo on June 7, 2019. At the end of that meeting, the parties agreed to meet again, and counsel for Independent Health confirmed that they would produce additional information to the United States, which the United States had previously requested and which the United States and Independent Health agreed was directly relevant to their settlement discussions.

As noted above, on June 21, 2019, the United States informed the Court that it was not intervening "at this time." Dkt. No. 62. As of that date, Government counsel believed that this

4

entire matter could likely be resolved without litigation, and was awaiting the additional information that Independent Health had agreed to provide. Independent Health provided the additional information requested by the United States on July 7, 2019. This information included complex data that took several months to process. Government counsel then met with counsel for Independent Health again on July 12, 2019, to continue their discussions. At the end of that meeting, it still appeared to undersigned counsel that the ongoing discussions could result in a settlement. In order to ensure that defense counsel understood the Government's view of the case, undersigned Government counsel indicated during the discussions that they believed the United States had a strong case, and indicated that Government counsel would likely recommend that the Department of Justice intervene on behalf of the United States in the event that the parties did not reach a resolution.

On September 25, 2019, Government counsel sent a letter to counsel for Independent Health with the results of the Government's analysis of the additional information and data provided by Independent Health. On December 6, 2019, counsel for the United States met again with counsel for Independent Health at the United States Attorney's Office in Buffalo. At that meeting, it became clear that the parties would not be able to reach a resolution. At the end of the meeting undersigned Government counsel informed counsel for Independent Health and DxID that Government counsel were seeking authority within the Department of Justice to intervene in this case.

During the seven month period since June 21, 2019, Government counsel also continued their discussions with GHC. In early January, the Government and GHC agreed on the principle

terms of a settlement to resolve Relator's allegations against GHC. As a result, the United States does not seek permission from the Court to intervene against GHC at this time.[2]

## ARGUMENT

The FCA provides that even after the United States has elected not to intervene in an FCA case, "the Court . . . may . . . nevertheless permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3); *see also United States ex rel. Stevens v. State of Vt. Agency of Natural Res.*, 162 F.3d 195, 200 (2d Cir. 1998) ("[e]ven if the government elects not to intervene at the outset, it may intervene upon a showing of good cause at any time thereafter."), *rev'd on other grounds*, 529 U.S. 765 (2000).

In defining "good cause" under § 3730(c)(3), courts have considered (1) the public interest; (2) whether new evidence probative of the defendant's liability has been discovered; (3) whether intervention will harm the relator's interests, and (4) whether intervention will unfairly prejudice the defendant. *United States ex rel. Hall v. Schwartzman*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 950 F. Supp. 1046, 1049 (D. Colo. 1996). Consideration of these factors clearly demonstrates that good cause exists to permit the United States to intervene in this case.

The public interest, which the *Rockwell* Court considered "of paramount importance" clearly favors allowing the United States to intervene in this case. At issue in this case is whether Independent Health submitted, and DxID and the individual defendants caused the submission of, unsupported diagnoses to Medicare in order to improperly increase the reimbursement that

---

[2] Counsel for the United States and GHC will inform the Court when they have signed a final settlement agreement.

Independent Health received from Medicare under the Part C program. Medicare is one of the largest taxpayer funded programs administered by the United States government. The public has an obvious interest in recouping funds obtained from the Medicare program by fraud and in deterring any future defrauding of the Medicare program. These interests will clearly be served by allowing the United States to intervene and participate as a full party in the litigation of this matter. *See, e.g., Rockwell,* 950 F. Supp. at 1049 ("participation . . . by the Government will add significantly to the completeness and fairness of any trial.").

The second factor courts typically consider is whether new evidence has emerged since the United States declined to intervene. In the seven months since the United States informed the Court that it was not intervening "at this time," the United States has focused its efforts on reaching a negotiated settlement. As a result of these efforts, the Government has reached a settlement in principle with GHC, which significantly reduces the complexity of this litigation by focusing it primarily on the alleged fraud committed by Independent Health and DxID. Moreover, the Government's discussions with Independent Health have included the exchange of additional factual information, including information relating to the scope of the use of addenda by DxID and Independent Health which is relevant to the magnitude of the alleged fraud. *See Schwartzman*, 887 F. Supp. at 62 (finding good cause, stating that "subsequent discovery of new and significant evidence which has altered [the Government's] view of the magnitude of the alleged fraud" was "precisely the circumstances which Section 3730(c)(3) was intended to address"). Finally, discussion of the parties' competing legal positions has clarified the Government's view of the strength of its case.

Third, allowing the Government to intervene will further Relator's interests rather than

7

harming them. *See, e.g., Rockwell*, 950 F. Supp. at 1049 ("the 'good cause' requirement of § 3730(c)(3) was intended to protect the interests of the relator."). The United States' intervention in this litigation would bring significant additional expertise and resources into this case and Relator consents to the United States intervention, thus indicating that Relator herself views the United States intervention as supporting her interests rather than threatening them. As a result, this factor clearly argues in favor of permitting the United States to intervene.

harming them. *See, e.g., Rockwell*, 950 F. Supp. at 1049 ("the 'good cause' requirement of § 3730(c)(3) was intended to protect the interests of the relator."). The United States' intervention in this litigation would bring significant additional expertise and resources into this case and Relator consents to the United States intervention, thus indicating that Relator herself views the United States intervention as supporting her interests rather than threatening them. As a result, this factor clearly argues in favor of permitting the United States to intervene.

Finally, allowing the Government to intervene in this matter will not unfairly prejudice Defendants. Courts have routinely granted the United States motions to intervene for good cause prior to the start of discovery in FCA cases on the grounds that the Government's intervention at this early stage of the litigation does not subject defendants to "duplicative discovery or undue delay." *Schwartzman*, 887 F. Supp. at 62; *see also United States ex rel. Roberts v. Sunrise Senior Living, Inc.*, No. CV 05-3758-PHX-MHM, 2009 WL 499764, at *1 (D. Ariz. Feb. 26, 2009) (permitting the United States to intervene for good cause "would not unduly prejudice or delay [the] proceeding or the parties" where "[n]one of the Defendants have filed an answer, and no formal discovery has occurred."); *Griffith v. Conn*, No. 11-157-ART-EBA, 2016 WL 3156497, at *4 (E.D. Ky. Apr. 22, 2016) (permitting the United States to intervene for good cause even after motions to dismiss had been filed and ruled upon because intervention "will not prejudice [defendants] . . . as little discovery has occurred in the case up to this point").[3]

In addition, Independent Health, DxID, and the individual defendants cannot claim any "unfair surprise" with regard to the Government's intervention in this matter. The Government's June 21, 2019 filing stated clearly that the Government intended to remain actively involved. *See*

---

[3] Copies of the *Sunrise Senior Living, Inc.* and *Griffith* decisions are attached as Exs. 1 and 2.

Dkt. No. 62 at 1 ("[a]lthough the United States is not intervening at this time, an active investigation is ongoing"). Moreover, as noted above, Government counsel informed counsel for Independent Health during their July 12, 2019 meeting that the Government believed its case had merit and that the United States would likely seek leave of Court to intervene if the parties were not able settle. Finally, at the December 6, 2019 meeting at which it became clear that the possibility of settlement was exhausted, Government counsel informed Defendants' counsel that the Government was seeking authority to intervene. The fact that government counsel have kept defense counsel informed about this issue further demonstrates that Defendants will not be prejudiced by the Government's intervention. *See Schwartzman,* 887 F. Supp. at 62 (fact that "defendants have been aware that the Government has been contemplating intervention" supports a finding of no undue prejudice); *Griffith,* 2016 WL 3156497, at *4 ("the government has continued its involvement in this case and notified the defendants that its investigation was ongoing, so intervention will not cause the defendants any unfair surprise.").

Notice of Election and Complaint-in-Intervention

If the Court grants the Government's motion for leave to intervene, the United States will file and serve its notice of election and complaint-in-intervention within one week of the date of the Court's Order.

## CONCLUSION

For all of the reasons stated above, the United States respectfully requests that the Court grant its motion to intervene in this action for "good cause" pursuant to 31 U.S.C. § 3730(c)(3). A proposed order is submitted herewith for the Court's consideration.

Respectfully submitted

JOSEPH H. HUNT
ASSISTANT ATTORNEY GENERAL


JAMES P. KENNEDY, JR.
UNITED STATES ATTORNEY

s/Kathleen A. Lynch

BY: _____

KATHLEEN A. LYNCH
ASSISTANT U.S. ATTORNEY
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5830
Kathleen.lynch@usdoj.gov

s/David Wiseman
_____
ANDY J. MAO
DAVID B. WISEMAN
SAMSON ASIYANBI
Attorneys
Commercial Litigation Branch
United States Department of Justice
Room 9.204
175 N. Street, NE
Washington, DC 20002
Tel: 202-514-0132
David.Wiseman@usdoj.gov

DATED:   January 23, 2019

AT:   Buffalo, New York

Attorneys for the United States