UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *ex rel.*
TERESA ROSS,

          Plaintiff,

   v.                                                                          **DECISION AND ORDER**
                                                                                                 12-CV-299S
INDEPENDENT HEALTH CORPORATION,
DxID LLC,
DR. JOHN HAUGHTON,
BETSY GAFFNEY, and
INDEPENDENT HEALTH ASSOCIATION, INC.,

          Defendants.

## I.  INTRODUCTION

In this *qui tam* action brought under the False Claims Act, 31 U.S.C. §§ 3729 et

seq., Relator Teresa Ross alleges that Defendants submitted false and inflated claims for

reimbursement to the federal Medicare program.   Now pending is the government's

Motion to Intervene, which the Relator supports, and Defendants oppose.   Because this

Court finds good cause to allow the government to intervene, it will grant the government's

motion and direct that it file its Notice of Intervention and Complaint-in-Intervention within

14 days of the entry date of this decision.

## II.  BACKGROUND

The Relator initiated this *qui tam* action on April 11, 2012, by filing a complaint,

which she later amended on February 5, 2016.   See Docket Nos. 1, 32.   In short, the

Relator alleges that Defendants violated the False Claims Act and conspired to do so by

1

submitting false claims for reimbursement to the Medicare Advantage program, otherwise known as Medicare Part C.   According to the Relator, Defendants knowingly submitted improper diagnoses to the Center for Medicare and Medicaid Services to increase their per-beneficiary monthly payments.   The improper diagnoses were used in the "risk adjustment" calculations that determine monthly payments to private insurers.   The Relator alleges that by skewing the "risk adjustment" calculations in their favor through the submission of false diagnoses, Defendants realized increased Medicare payments to which they were not lawfully entitled.

After receiving Relator's complaint and written disclosure of material evidence, the government had 60 days to determine whether it would intervene and proceed with the action.   See 31 U.S.C. § 3730 (b)(2).   But rather than make that election at the outset, the government began requesting and receiving 180-day extensions of its intervention deadline while it investigated the Relator's allegations.   These requests—15 in all— cumulatively extended the intervention deadline to June 21, 2019, affording the government more than seven years to make its election decision.   See Docket No. 53.

On June 21, 2019, the government filed a notice indicating that it was electing not to intervene at that time, but that an active investigation remained ongoing.   See Docket No. 62.   The Relator then served her amended complaint on Defendants, after which they moved to dismiss on October 16, 2019.[1]   See Docket No. 94.   That motion was fully briefed as of January 23, 2020, see Docket Nos. 94, 95, 103, 104, the same date on

---

[1] Defendant Group Health Cooperative also moved to dismiss, see Docket No. 91, but then settled with the Relator and the government, see Docket Nos. 107, 135.

which the government filed its instant Motion to Intervene, see Docket No. 105.   The

Motion to Intervene was fully briefed as of April 3, 2020, see Docket Nos. 105, 109, 110,

113, 114, 118, 122-124, at which time this Court took it under advisement without oral

argument.

## III.    DISCUSSION

Enacted in 1863, the False Claims Act imposes civil liability upon persons who,

inter alia, knowingly present or cause to be presented false or fraudulent claims for

payment or approval to officers or employees of the United States.   See 31 U.S.C. §

3729 (a)(1)(A); see also Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529

U.S. 765, 769, 120 S. Ct. 1858, 1860, 146 L. Ed. 2d 836 (2000).   It was enacted "with

the principal goal of 'stopping the massive frauds perpetrated by large [private]

contractors during the Civil War.'"   Vt. Agency, 529 U.S. at 781 (quoting United States v.

Bornstein, 423 U.S. 303, 309, 96 S. Ct. 523, 46 L. Ed. 2d 514 (1976)); see also United

States v. Sakura Glob. Cap. Mkts., Inc., 377 F.3d 145, 151-52 (2d Cir. 2004); United

States ex rel. Mikes v. Straus, 274 F.3d 687, 692 (2d Cir. 2001)(explaining that the False

Claims Act was enacted "after disclosure of widespread fraud during the War-Between-

The-States revealed that the union government had been billed for nonexistent or

worthless goods, had been charged exorbitant prices, and had its treasure plundered by

profiteering defense contractors") (citing United States v. McNinch, 356 U.S. 595, 599, 78

S. Ct. 950, 2 L. Ed. 2d 1001 (1958)); cf. S. Rep. No. 345, at 1 (1986), as reprinted in 1986

U.S.C.C.A.N 5266, 5266 (describing the purpose of the False Claims Act as "to enhance

3

the Government's ability to recover losses sustained as a result of fraud against the Government").

Actions under the False Claims Act may be commenced by either the government itself, see 31 U.S.C. § 3730 (a), or on behalf of the government by a private person (the relator) through a *qui tam* action, see 31 U.S.C. § 3730 (b)(1).  Vt. Agency, 529 U.S. at 769; see also Mikes, 274 F.3d at 692 (noting that the False Claims Act's *qui tam* provision is "designed to encourage private individuals to file suit by offering them a percentage of any money recovered").   If a private person commences the action, he or she must serve the government a copy of the complaint and written disclosure of substantially all material evidence and information possessed.   See 31 U.S.C. § 3730 (b)(2).   The government may then elect to intervene and proceed with the action within 60 days (or within any extension of that time period), see 31 U.S.C. §§ 3730 (b)(2) and (3), or may seek to intervene "at a later date" upon a showing of good cause, see 31 U.S.C. § 3730 (c)(3).

The good-cause standard is not defined by statute, but at a minimum, it "must require the government to provide some justification for its untimely intervention."   Griffith v. Conn, NO. 11-157-ART-EBA, 2016 WL 3156497, at *3 (E.D. Ky. Apr. 22, 2016). Courts faced with intervention motions under 31 U.S.C. § 3730 (c)(3) consider (1) whether intervention would be in the public interest, see United States *ex rel.* Stone v. Rockwell Int'l Corp., 950 F. Supp. 1046, 1049 (D. Colo. 1996) (finding that the public interest "is of paramount importance" and concluding that the government's participation adds significantly to completeness and fairness of any trial); (2) whether new, probative evidence has been discovered, particularly as to the magnitude of the fraud, see United

4

States *ex rel.* Hall v. Schwartzman, 887 F. Supp. 60, 62 (E.D.N.Y. 1995); United States v. Aseracare, Inc., Nos. 2:12-cv-245-KOB, 2:12-cv-2264-KOB, 2:09-cv-627-KOB, 2012 WL 5289475, at *2-*3 (N.D. Ala. Oct. 24, 2012); and (3) whether intervention would unfairly prejudice the relator or the defendant, see Griffith, 2016 WL 3156497, at *3; Rockwell, 950 F. Supp. at 1049.   As the Griffith court put it, the good-cause standard ultimately "requires balancing the government's justifications for an untimely intervention against any possible prejudice to the relators and defendants caused by such intervention.   If the government's justification outweighs any prejudice to the other parties, then the government has shown 'good cause' to intervene."   2016 WL 3156497, at *3.

The government maintains that each consideration above favors a finding of good cause.   First, it argues that its participation will serve the public interest as it will use its resources and expertise to recoup funds illegally obtained from the Medicare program, one of the largest taxpayer-funded programs administered by the government.   Second, the government maintains that since the time it declined to intervene, Defendants have produced additional information relating to the magnitude of the alleged fraud, specifically seven years of previously undisclosed data.   Finally, the government contends that neither the Relator nor Defendants would be unfairly prejudiced by its intervention at this time: The Relator will benefit from the government's significant expertise and resources, and Defendants have been aware of the government's continuing investigation of this case in which discovery has not yet begun.

Defendants counter that the government fails to establish good cause for intervention. They argue at length that the government had substantial time and information—more than seven years and multiple millions of pages of documents and files—to make its election decision yet declined to intervene. And in Defendant's view, none of the materials the government received after its election materially informs its understanding of the magnitude of the alleged fraud. Defendants further argue that permitting the government's late intervention would harm, rather than serve, the public interest because it would reward a dilatory investigation. On the prejudice prongs, Defendants maintain that the Relator would be prejudiced by intervention because it would reduce her share of any recovery, and that they are prejudiced by the government's undue delay, both the delay associated with the government's investigation and its waiting to seek intervention until after they incurred the strategic and financial costs of laying bare their arguments for dismissal.

Having considered the parties' arguments and the relevant considerations, this Court finds good cause to allow the government to intervene. First, the public interest weighs heavily in favor of permitting intervention. The purpose of the Federal Claims Act is to protect the government from fraud, and it is best protected if it fully participates in the litigation, bringing its considerable expertise and resources to bear against those alleged to have defrauded it. See United States ex rel. Drennen v. Fresenius Med. Care Holdings, Inc., Civil Action No. 09-10179-GAO, 2017 WL 1217118, at *1 (D. Mass. Mar. 31, 2017) ("the government remains the real party in interest in the qui tam action"); Griffith, 2016 WL 3156497, at *3 (stating that "the government should be able to intervene

when necessary to protect its own interests"); <u>Rockwell</u>, 950 F. Supp. at 1049 (finding that the public interest is of "paramount importance" and that the government's participation "would add significantly to the completeness and fairness of any trial").

Second, the government's identification of post-declination disclosures that it views as increasing the magnitude of the alleged fraud also weighs in favor of permitting intervention.   While the two sides quarrel over the circumstances and materiality of these disclosures, particularly whether the government diligently sought this information and whether Defendants obfuscated, it is unnecessary for this Court to resolve their disputes for purposes of resolving the present motion.   It is enough that the government has identified previously undisclosed documents containing seven years of data that it views as significant and material to the scope of the alleged fraud.   See <u>Drennen</u>, 2017 WL 1217118, at *6 (finding that the accuracy of the government's interpretation of new evidence is best explored at trial, not in connection with whether it should be permitted to intervene).

Third, the Relator's support of the government's motion weighs in favor of allowing the government to intervene.   The Relator consents to the government's intervention and separately filed a submission supporting the government's request and disclaiming Defendants' contention that she would be prejudiced by the government's involvement. <u>See</u> Docket No. 118.   Given that one of the purposes of requiring the government to establish good cause for late intervention is to protect the relator, <u>see</u> <u>Rockwell</u>, 950 F. Supp. at 1049 ("the 'good cause' requirement of § 3730 (c)(3) was intended to protect the interests of the relator"), the Relator's consent in this case weighs heavily in favor of

granting the government's motion.   See United States ex rel. Guthrie v. A Plus Home Health Care, Inc., No. 12-60629-CIV, 2013 WL 12384137, at *2 (S.D. Fla. July 18, 2013) ("[T]he Relator's consent to the intervention confirms that his status and rights are adequately protected.").

Finally, this Court is unconvinced that Defendants have suffered prejudice that outweighs the strength of the considerations above.   While Defendants may understandably be displeased with the length of the government's investigation and the timing of its intervention motion, the fact remains that this case is procedurally in its infant stages, with discovery not having yet commenced.   See United States ex rel. Roberts v. Sunrise Senior Living, Inc., No. CV 05-3758-PHX-MHM, 2009 WL 499764, at *1 (D. Ariz. Feb. 26, 2009 (finding no undue prejudice where none of the defendants had filed an answer and no formal discovery had occurred).   Moreover, lengthy investigative delay does not necessarily preclude intervention.   See Drennen, 2017 WL 1217118, at *8 (permitting intervention after a nearly 7-year long investigation); Rockwell, 950 F. Supp. at 1047 (permitting intervention after more than six years).   Further, there is no unfair surprise since Defendants have been on notice of the government's continuing investigation and the likelihood that it would seek to intervene.   See Schwartzman, 887 F. Supp. at 62 (finding that the defendants' knowledge of government's intention to intervene weighed against finding unfair prejudice); Griffith, 2016 WL 3156497, at *4 (finding no unfair surprise where the defendants were aware of the government's ongoing investigation).   Finally, this Court finds that any strategic or financial prejudice arising

from the filing of Defendants' motion to dismiss is outweighed by the reasons supporting intervention.

In sum, this Court finds that the government's justification for intervening at this time outweighs any prejudice to Defendants.   Intervention serves the public interest, is supported by new evidence, is welcomed by the Relator, and does not result in unfair prejudice to Defendants.   The government's motion will therefore be granted, and it will be directed to file a Notice of Intervention and Complaint-in-Intervention within 14 days of the entry date of this decision.   Defendants' pending motion to dismiss will be denied as moot.[2]   See Roberts, 2009 WL 499764, at *2 (finding pending motion to dismiss moot where government allowed to intervene).

## IV.   CONCLUSION

For the reasons set forth above, the government's Motion to Intervene will be granted, and Defendants' motion to dismiss will be denied as moot.

## V.   ORDERS

IT HEREBY IS ORDERED, that the government's Motion to Intervene (Docket No. 105) is GRANTED.

FURTHER, that the government must file its Notice of Intervention and Complaint-in-Intervention within 14 days of the entry date of this decision.

---

2 Defendants urged this Court to resolve their motion to dismiss before taking up the government's motion to intervene, but this Court finds it most in the interests of justice and judicial economy to resolve the government's motion first.   See Roberts, 2009 WL 499764, at *2.

9

FURTHER, that Defendants' Motion to Dismiss (Docket No. 94) is DENIED as moot.

SO ORDERED.

Dated:      August 9, 2021
            Buffalo, New York

                                         s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                       United States District Judge