# Ex. D

# INDEPENDENT HEALTH
## BUSINESS ASSOCIATE AND CONFIDENTIALITY AGREEMENT
### (Including Protected Health Information & Business Information)

**THIS AGREEMENT** is entered into on this 31st day of August, 2011, between Independent Health Association, Inc., a New York not-for-profit health maintenance organization; Independent Health Benefits Corporation (collectively herein "Independent Health") both with principal offices at 511 Farber Lakes Drive, Buffalo, New York 14221, and DxID LLC ("Vendor"), with principal offices at 349 Commercial Street, Suite 2000, East Rochester, New York 14445.

Independent Health and Vendor agree as follows:

I.    **General Understandings**

A.    Independent Health will make available and/or transfer to Vendor certain information that is confidential and must be afforded special treatment and protection so that Vendor may perform certain services for Independent Health. Such information may be considered: (1) individually identifiable health information or protected health information or electronic protected health information (collectively referred to herein as "Health Information") as defined under the Health Insurance Portability Act of 1996 Privacy Rule ("HHS Privacy Rule") and HHS Security Rule and/or (2) confidential, proprietary, trade secret, business and other information ("Business Information"). Health Information and Business Information may be referred to collectively herein as "Information", or may also be referred to separately as "Health Information" or "Business Information".

The parties agree to comply with the requirements of the HHS Privacy Rule, HHS Security Rule, the HITECH Act and applicable state and federal laws, rules and regulations regarding the privacy, confidentiality and security of health information.

B.    The parties agree that there are special rules governing the use and disclosure of Health Information as set forth in Section II of this Agreement and acknowledge that Information may be Health Information, Business Information, or both, and that different rules may apply based on the Information's classification.

C.    For purposes of this Agreement, Information includes, but is not limited to, any information provided by Independent Health whether electronically or on paper, obtained by meeting with Independent Health personnel, whether furnished before or after the date of this Agreement, together with analyses, compilations, studies or other documents or

records prepared by Independent Health which contain or otherwise reflect or are generated from such Information. Information does not include information which (1) becomes generally available to the public other than as a result of disclosure by Independent Health or, (2) was available to Vendor on a non-confidential basis prior to its disclosure, or (3) becomes available to Vendor or a non-confidential basis from any source other than Independent Health.

## II.    Confidentiality of Health Information

A.    **General Rule.** Any Health Information Vendor accesses or receives can only be used or disclosed in accordance with this section, the HHS Privacy Rule, the HHS Security Rule, the HITECH Act and applicable state and federal laws, rules and regulations regarding the privacy, confidentiality and security of health information.

B.    **Covered Entity Status.** The parties agree that Independent Health is a "covered entity" under the HHS Privacy Rule and Security Rule and Vendor is or could be Independent Health's business associate because Vendor may perform or assist in the performance of a function on behalf of Independent Health which involves the use or disclosure of individually identifiable health information or will provide legal, actuarial, accounting, consulting, data aggregation, management, administrative, accreditation or financial services for Independent Health which involves the disclosure of individually identifiable health information from Independent Health.

C.    **Definitions.** With respect to the use and disclosure of Health Information by Vendor, the following terms shall have the following meaning:

1.    "Designated Record Set" means a group of enrollment, payment, claims adjudication and case or medical management records maintained by or for Independent Health or a group of records used, in whole or in part, by or for Independent Health to make decisions about individuals.

2.    "HHS Privacy Rule" means the Standards for Privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, subparts A and E as amended, clarified and supplemented from time-to-time.

3.    "HHS Security Rule" means the Security Standards for the Protection of Electronic Protected Health Information at 45 CFR Part 160 and Part 164, subparts A and C as amended, clarified and supplemented from time-to-time.

4.    "Individual" means the person who is the subject of the Information.

2

5. "Health Information" means any health information, whether oral or recorded in any form or medium, that is created or received by Independent Health and relates to the past, present, or future physical or mental health or condition of an individual or the past, present or future payment for the provision of health care to an individual. Information includes but is not limited to demographic information, financial information, health information that identifies an individual or reasonably could be used to identify an individual (Health Information may also be referred to in this Agreement as "protected health information" and "individually identifiable health information").

6. "Required By Law" means a legal mandate that compels a use or disclosure of protected health information and is enforceable in a court of law.

7. "Secretary" shall mean the Secretary of the United States Department of Health and Human Services ("HHS") or his/her designee.

8. "HITECH Act" shall mean the Health Information Technology for Economic and Clinical Health Act, as incorporated in the American Recovery and Reinvestment Act of 2009.

**D.** **Nature of Use and Disclosure of Health Information**. The Parties agree that Vendor shall be permitted to use and/or disclose Health Information provided or made available from Independent Health for the following stated purposes:

Performing services as contracted with Independent Health.

Vendor shall not use or disclose the Health Information provided or made available by Independent Health for any purpose other than as expressly permitted by this section or as Required By Law.

**E.** **Vendor's Obligations**.

1. **Limits On Use And Disclosure**. Vendor agrees that the Health Information provided or made available by Independent Health shall not be used or disclosed other than as specifically set forth in Section II.D. of this Agreement or as Required By Law.

2. **Appropriate Safeguards**. Vendor shall establish and maintain appropriate administrative, technical and physical safeguards to protect the confidentiality, integrity and availability of Health Information and to prevent any use or disclosure of the Health

3

Information other than as provided in Section II.D of this Agreement.

Vendor acknowledges and agrees that no Independent Health confidential or customer data may be placed on unencrypted mobile media, CDs, DVDs or laptops or be transmitted across the internet in a non-secure method. Vendor agrees to maintain appropriate and updated virus protection and security certificates which comply with industry standards.

3.      **Reports of Improper Use or Disclosure**. Vendor shall file a written report to Independent Health's Privacy and Information Security Officer within two (2) days of discovery of: (1) any use or disclosure of Health Information not permitted under by Section II.D of this Agreement or not permitted by law or (2) any security incident as defined in 45 CFR §164.304 and/or any "breach of the security of the system" as defined in New York General Business Law Section 899-aa(1)(c) of which it becomes aware.

In addition, Vendor will report, following discovery and without unreasonable delay, any "Breach" of "Unsecured Protected Health Information" as these terms are defined by the HITECH Act and any implementing regulations. This obligation to report shall include any unauthorized acquisition, access, use, or disclosure, even where Vendor has determined that such unauthorized acquisition, access, use, or disclosure does not compromise the security or privacy of such information, unless such acquisition, access, use or disclosure is excluded from the definition of Breach in 45 CFR §164.402(2). Vendor shall cooperate with Independent Health in investigating the Breach and in meeting Independent Health's obligations under the HITECH Act and any other security breach notification laws.

Any such report shall include the identification (if known) of each individual whose Unsecured Protected Health Information has been, or is reasonably believed by Vendor to have been, accessed, acquired, or disclosed during such Breach. Vendor will make the report to Independent Health's Privacy and Information Security Officer as soon as possible after Vendor learns of such non-permitted use or disclosure, but no later than the timeframe set forth above. Vendor's report will at least:

A)      Identify the nature of the non-permitted access, use or disclosure, including the date of the Breach and the date of discovery of the Breach;

4

B)    Identify the protected health information accessed, used or disclosed as part of the Breach (e.g., full name, social security number, date of birth, etc.);

C)    Identify who made the non-permitted access, use or disclosure and who received the non-permitted disclosure;

D)    Identify what corrective action Vendor took or will take to prevent further non-permitted access, uses or disclosures;

E)    Identify what Vendor did or will do to mitigate any deleterious effect of the non-permitted access, use or disclosure; and

F)    Provide such other information, including a written report, as Independent Health may reasonably request.

Vendor will also report to Independent Health any successful (i) unauthorized access, use, disclosure, modification, or destruction of Independent Health's electronic protected health information, or (ii) interference with Vendor's system operations in Vendor's information systems, of which Vendor becomes aware. If any such security incident resulted in a disclosure of Independent Health's protected health information not permitted by this Agreement, Vendor will make report such disclosure as set forth above.

4.    **Right of Access to Information**. If Independent Health provides Vendor with Information that is part of a Designated Record Set, upon request and in a time and manner directed by Independent Health, Vendor agrees to provide access to such Health Information to Independent Health or, when directed by Independent Health, to an Individual in order for Independent Health to meet the access to information provisions of the HHS Privacy Rule.

5.    **Amendment and Incorporation of Amendments**. If Independent Health provides Vendor with Health Information that is part of a Designated Record Set, upon request and in a time and manner directed by Independent Health, Vendor agrees to make any amendment(s) to such Information.

6.    **Providing Accounting**. Under the HHS Privacy Rule, Independent Health is required to provide its members an accounting of certain disclosures of their protected health information for a reason other than treatment, payment and health care operations. To assist Independent Health in providing this

5

member right, in a time and manner designated by Independent Health, Vendor agrees to document disclosures of Health Information and information related to such disclosures to enable Independent Health to respond to an Individual's request for an accounting of disclosures of their protected health information.

7.  **Access to Books and Records and Duty to Cooperate**. Vendor agrees to make its internal practices, books, and records relating to the use or disclosure of Health Information received from, or created or received by Vendor on behalf of Independent Health, available to Independent Health, or at the request of Independent Health, to the Secretary in a time and manner designated by Independent Health for purposes of determining Independent Health's compliance with the HHS Privacy Rule and to cooperate fully with Independent Health when responding to regulatory audits and investigations.

8.  **Mitigation Procedures**. Vendor shall mitigate to the maximum extent, any deleterious effect(s) arising out of or from the intentional or inadvertent use or disclosure of Health Information that is or could be contrary to this Agreement, the HHS Privacy Rule, the HHS Security Rule, or the HITECH Act or that could damage third parties.

9.  **Sanctions**. Vendor must develop and implement sanctions procedures for any employee, subcontractor or agent who violates this Agreement, the HHS Privacy Rule, the HHS Security Rule, or the HITECH Act. Such sanction procedures shall be made available to Independent Health upon request.

10. **Minimum Necessary**. Vendor warrants that it will only request and use the minimum amount of Health Information necessary to perform the stated purpose(s) of this Agreement set forth in Section II.D.

11. **Response to Government Authorities**. Vendor shall promptly notify Independent Health when in receipt of a governmental or administrative subpoena(s) or any informal request(s) from a governmental entity relating in any way to the Health Information provided pursuant to this Agreement and allow Independent Health to seek a protective order or otherwise challenge the subpoena or request before responding thereto.

F.  **Miscellaneous.**

6

1.   **Amendment**.  The Parties agree to amend this Agreement from time-to-time as necessary for Independent Health to comply with the HHS Privacy Rule, the HHS Security Rule, the HITECH Act, the Health Insurance Portability and Accountability Act of 1996 and other applicable state or federal laws, rules and regulations.

2.   **Ambiguity**.  Any ambiguities in this section of this Agreement or its defined terms shall be resolved in favor of a meaning that permits Independent Health to comply with the HHS Privacy Rule, the HHS Security Rule, and the HITECH Act.

## III.   Confidentiality of Information

A.   **Limits on Use and Disclosure.**  Vendor agrees that Information shall not be used other than in connection with the purpose set forth in Section II.D of this Agreement.  However, Vendor may disclose said Information: (1) to Vendor's employees, agents or representatives who need to know such Information for the purpose set forth in this Agreement provided said employees, agents or representatives have signed a confidentiality agreement requiring the same restrictions and conditions contained herein; (2) if required by law or requested regulatory authorities or (3) if Independent Health gives its prior written consent to such disclosure.

B.   **Safeguards**.  In addition to the requirements of section II.E.2 of this Agreement, Vendor shall use all necessary and appropriate safeguards to prevent use or disclosure of Information other than as permitted hereby.

C.   **Reports on Improper Use or Disclosure**.  In addition to the requirements of section II.E.3 of this Agreement, Vendor agrees to report to Independent Health any use or disclosure of Information not provided for by this Agreement or any security incident of which it becomes aware within two (2) days of discovery.

D.   **Non-disclosure**.  Without Independent Health's prior written consent, Vendor will not disclose to any person the fact that Information has been made available to Vendor or that Vendor has inspected any Information or portion thereof, the fact that discussions between Vendor and Independent Health are taking place or other facts with respect to these discussions, including the status thereof and the existence of this Agreement.  The term "person" shall be broadly interpreted to include without limitation any corporation, company, partnership, individual or group.

E.   **Property Rights**.  The Information shall be and remain the property of Independent Health.  Vendor shall not acquire title or rights to the Information, including any de-identified information, as a result of this Agreement.

F.    **Survival**.  The confidentiality obligations hereunder are perpetual and shall survive the termination of this Agreement for any reason.

G.  **Return or Destruction of Information**.  At termination of this Agreement for any reason, Vendor shall return or destroy all Information and any copies of such Information, if any and in any medium, received from, or created or received by Vendor.  This provision shall apply to Information that is in the possession of Vendor's subcontractors, representatives or agents, if any.  If Vendor destroys the Information, upon Independent Health's request, Vendor shall certify to Independent Health that the Information has been destroyed. This provision shall survive the termination of this Agreement for any reason.

IV.    **Additional Terms and Conditions Required by Medicare & Contracts with NY DOH.**

The parties shall comply with all applicable federal, state and local laws, rules, and regulations and restrictions in the conduct of their obligations under this Agreement, including without limitation:

(a)    **Laws & Rules.**  The parties agree to comply with all applicable Medicare, Medicare Advantage and Medicare Part D laws, rules and regulations and the Centers for Medicare and Medicaid Services ("CMS") instructions to the extent applicable to such Party.  (42 CFR §§422.504(i)(4)(v) and §423.505(i)(4)(iv)).

(b)    **Records.**  Vendor agrees to comply with all applicable state and federal requirements regarding the accuracy, confidentiality and retention of records of members of INDEPENDENT HEALTH, including the requirements established by CMS which include, but are not limited to the retention of all records for a period of ten years from the date this Agreement expires or terminates or the completion of any Medicare-related audit, whichever is later.  (42 CFR §§422.504(a)(13) and 422.118).

(c)    **Remedies.**  If CMS and/or INDEPENDENT HEALTH determine that Vendor has not performed satisfactorily in regards to the activities or responsibilities under this Agreement, then Independent Health shall require Vendor to prepare a written plan of correction as soon as possible but in no event later than ten days of Independent Health's written notice in regards to those activities or responsibilities that CMS and/or Independent Health have determined that Vendor has not performed satisfactorily.  Vendor shall have thirty days, or a longer time period if agreed to by the parties, from the date of Independent Health 's notice to implement its corrective action plan.  Vendor 's corrective action plan may be submitted to CMS by Independent Health.  If Vendor fails to materially correct the activities or responsibilities in question or if CMS refuses to accept Vendor 's corrective action plan, then, upon written notice, Independent Health may revoke

8

the activity or responsibility that is the subject of CMS and/or Independent Health's dissatisfaction. Upon such revocation, the parties agree that the amount payable to Vendor under the Agreement shall be reduced equitably and documented in a written amendment. (42 CFR §§422.504(i)(4)(ii), 423.505(i)(4)(ii) and Medicare Part D Prescription Drug Benefit Manual, Chpt. 9 §40.2).

(d) **Monitoring of Services:** Independent Health shall monitor the performance of the parties and the services provided by Vendor under this Agreement on an ongoing basis under the terms and conditions of this Agreement. Such monitoring may include routine and random audits and Independent Health shall have the right to interview Vendor's staff, employees and consultants who provide services hereunder. If Independent Health permits Vendor to conduct its own audits, Vendor shall provide Independent Health with a copy of its written audit work plan prior to the execution of this Agreement. Vendor agrees to adjust its written audit work plan to meet Independent Health's reasonable satisfaction. (42 CFR §§422.504(i)(4)(iii) and 423.505(i)(4)(iii) and Part D Manual, Chapt. 9, §§40.2 and 50.2.6.1.3).

(e) **Right to Audit:** Vendor agrees that CMS, the United States Department of Health and Human Services ("HHS"), and the United States Comptroller General or their designees shall have the right to audit, evaluate or inspect any books, contracts, computer or other electronic systems including medical records and documentation, or other records of Vendor that pertain to or are related to any aspect of the services provided under this Agreement for a period of up to ten years from the date this Agreement expires or terminates, or the completion of any Medicare-related audit, whichever is later, and such other periods in excess of ten years or more as defined in Medicare, Medicare Advantage and Medicare Part D laws, rules, and regulations and CMS instructions. This provision shall survive the termination of this Agreement for any reason. (42 CFR §§422.504(e)(2) - (4), 422.504(i)(2), 423.505(i)(2)(i)-(ii) and 2009 CMS Call Letter, Section B, XI "Compliance/Monitoring").

(f) **Ultimate Responsibility:** Notwithstanding any provision of this Agreement, Independent Health maintains the ultimate responsibility for adhering to and otherwise fully complying with all terms and conditions of its Medicare Advantage and Medicare Part D contracts with CMS and all applicable statutory, regulatory and other requirements. Vendor acknowledges and agrees that the services it provides under this Agreement shall be consistent with and shall comply with Independent Health's contractual obligations with CMS regarding benefit plans which are subject to Medicare, Medicare Advantage and/or Medicare Part D laws, rules and regulations and CMS instructions. Vendor agrees to cooperate with Independent Health in meeting its responsibilities under Medicare Advantage and Medicare Part D. (42 CFR §§422.504(i)(1) and (i)((3)(iii) and 423.505(i)(1) and (i)(3)(iii)).

9

(g)    **Billing Rights:** Vendor agrees that in no event, including, but not limited to, non-payment by Independent Health, insolvency of Independent Health or other financial difficulties of Independent Health, shall Vendor bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from or have any recourse against an Independent Health member or person (other than Independent Health) acting on his/her behalf, for services provided pursuant to this Agreement. Independent Health shall indemnify any member of Independent Health for payment of any fees that are the legal obligation of Independent Health for services furnished by providers that do not contract, or have not otherwise entered into an agreement with Independent Health, to provide services to members. The parties acknowledge that the payments made hereunder are funded in whole or in part from federal funds thereby subjecting the parties to certain laws applicable to individuals and entities receiving federal funds. The applicable laws include but are not limited to the federal False Claims Act, the Anti-Kickback statute and the Health Insurance Portability and Accountability Act of 1996 Administrative Simplification rules. This provision shall survive termination or expiration of this Agreement for any reason. (42 CFR §§422.504(g)(1) and (i)(3)(i), 423.505(i)(3)(i)).

(h)    **Other CMS Matters:** Independent Health oversees and is accountable to CMS for any functions or responsibilities that are described in 42 CFR §422.504(i)(3). Independent Health only delegates activities or functions to Vendor in a manner consistent with the requirements set forth in 42 CFR §§422.504(i)(3)-(4) and (ii), 423.505(i)(3)(ii) and (i)(4). Independent Health shall to include in this Agreement such other terms and conditions as CMS may find necessary and appropriate in order to implement the Medicare Advantage or Medicare Part D programs. (42 CFR §§422.504(j) and 423.505(j)).

(j)    **Certifications:** Vendor agrees and certifies that it will review the United States General Services Administration and the United States Department of Health and Human Services' exclusion lists upon the initial hiring of any of its employees, agents or contracts who will be providing services under this Agreement and annually thereafter to ensure that any employee, agent or contractor who provides services hereunder is not excluded from participation any Federally-Funded health care programs. Vendor further agrees that if it discovers any employee, agent or contractor has been excluded from participation in any health care program, such employee, agent or contractor will be immediately removed from directly or indirectly providing services under this Agreement and Vendor will take appropriate corrective actions. In addition, Vendor agrees and certifies that it will require its managers, officers and directors who are responsible for the administration or delivery of Medicare Advantage or Medicare Part D benefits to sign a conflicts of interest statement, attestation or certification at time of hire and annually thereafter certifying that the manager, officer or director is free from any conflict of interest in administering Medicare Advantage or Medicare Part D benefits. (42 USC §1320 a-7, 42 CFR §422.752(a)(8) and Part D Manual, Chapt. 9 §50.2.1.2).

10

(k)    **Compliance with Policies:**  To the extent applicable, Vendor agrees to comply fully and abide by the rules, policies and procedures Independent Health has established as part of its Medicare Advantage and Medicare Part D Programs.

(l)    **Code of Conduct:** Vendor shall adopt and require its employees, officers, directors and contractors to follow a written code of conduct that reflects Vendor's commitment to detecting, preventing and correcting fraud, waste and abuse in the administration or delivery of Medicare Advantage and Medicare Part D programs.  Such code of conduct shall be made available to Independent Health prior to the execution of this Agreement and at least annually thereafter.  (Part D Manual, Chapt. 9 §50.2.1.3).

(m)    **Compliance Training:**  Vendor shall provide training and education to its employees upon initial hire and annually thereafter concerning its Medicare compliance program, including measures that prevent, detect and correct: (1) noncompliance with CMS' program requirements and (2) fraud, waste and abuse. Documentation that such training occurred shall be provided to Independent Health at least annually and as reasonably requested during any CMS audit of Independent Health.  (42 CFR §423.504(b)(vi)(C), Part D Manual, Chapt. 9 §50.2.3.2).

(n)    Independent Health will monitor the performance of Vendor under this Agreement and will terminate the Agreement and/or impose other sanctions if Vendor's performance does not satisfy standards set forth in Independent Health's Medicaid Managed Care Family Health Plus contract and/or its Child Health Plus contract with the New York State Department of Health (collectively referred to as "the DOH Contracts").

(o)    Vendor agrees that the work it performs under this Agreement will conform to the terms of the DOH Contracts and it will take corrective action if Independent Health identifies deficiencies or areas of needed improvement in Vendor's performance.

(p)    Vendor agrees to be bound by the confidentiality requirements set forth in the DOH Contracts.

(q)    This Agreement shall not limit or terminate Independent Health's duties under the DOH Contracts.

(r)    Independent Health shall not impose obligations and duties on Vendor that are inconsistent with the DOH Contracts or that impair any rights accorded to DOH, the local Department of Social Services or the HHS.

(s)    Nothing contained in this Agreement shall create contractual relationship between Vendor and DOH.  Furthermore, Vendor acknowledges and agrees that it is not

11

permitted to contact DOH regarding any matter connected to this Agreement by telephone, email, facsimile, social media site, in person or otherwise without Independent Health's consent and without giving Independent Health the opportunity to be present for or be a part of the communication.

(t)     Vendor agrees, pursuant to 31 U.S.C. §1352 and 45 CFR Part 93, that no Federally appropriated funds have been paid or will be paid to any person by or on behalf of Independent Health for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the award of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement. Vendor agrees to complete and submit the "Certification Regarding Lobbying".

If any funds other than Federally appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a member of Congress, in connection with the award of any Federal Contract, the making of any Federal grant, the making of any Federal loan, the entering of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000 Vendor shall complete and submit Standard Form-LLL "Disclosure Form to Report Lobbying," in accordance with its instructions.

(u)     Vendor agrees to disclose to Independent Health on an ongoing basis, any managing employee that has been convicted of a misdemeanor or felony related to the person's involvement in any program under Medicare, Medicaid or a Title XX services program (Block grant programs).

(v)     Vendor agrees to monitor its employees and staff against the List of Excluded Individuals and Entities and excluded individuals posted by the New York State Office of the Medicaid Inspector General.

(w)     This Agreement shall fulfill the requirements of 42 CFR Part 438 to the extent applicable to the services provided hereunder.

(x)     In the event Independent Health fails to pay Vendor pursuant to [specify section of the Agreement where compensation is mentioned] *{or any applicable Statement(s) of Work}* to the Agreement, Vendor agrees that it will not seek payment from the DOH, any member of Independent Health or any individual acting on behalf of any Independent Health member.

## V.     **Miscellaneous**

A.    **Term.** The Term of this Agreement shall commence on August 31, 2011 and shall continue until two (2) years after the Vendor no longer performs services for Independent Health.

B.    **Non-delegation.** This Agreement is intended to secure the services of Vendor and shall not be assigned, sublet, delegated, subcontracted or otherwise transferred without prior written consent of Independent Health, such consent shall not be unreasonably withheld.

C.    **Termination.** Independent Health shall have the right to terminate this Agreement at once if Independent Health determines that Vendor has violated a material term of this Agreement or any Vendor employee, agent or representative violates a material term of the Confidentiality Agreement he or she entered into pursuant to Section III.A of this Agreement.

D.    **Indemnification.** Vendor, its employees, agents, and representatives, and subcontractors shall indemnify and hold harmless Independent Health from and against any and all claims, damages, losses or expenses of any kind or nature whatsoever, including reasonable attorney's fees, court costs, expert witnesses and expenses, arising out of: (1) Vendor, its employees, agents, representatives, and subcontractors breach of privacy, security or confidentiality obligations under this Agreement or applicable law and/or (2) any act or omission of Vendor, its employees, agents, representatives and subcontractors in the performance of this Agreement. Vendor acknowledges that its indemnification obligation includes indemnifying Independent Health for civil money penalties and/or criminal money penalties imposed by federal regulatory authorities enforcing the HHS Privacy Rule, HHS Security Rule, and the HITECH Act for damages resulting from any civil cause of action brought against Independent Health for breach of this Agreement, the confidentiality or privacy obligations therein, negligence or defamation under state law and for consequential damages. Independent Health agrees: (a) to promptly notify Vendor in writing by certified mail of such claims, suits or proceedings; (b) to give Vendor the right to control and direct investigation, preparation, defense and settlement of any claims, suits or proceedings; and (c) to give assistance and full cooperation for the defense of same. Notwithstanding the above provision, Independent Health and Vendor agree that this Agreement is not intended to create any legal relationship between the parties other than that of independent parties contracting with the other solely for the purposes of effecting this Agreement.

E.    **Insurance.** Vendor warrants that it has insurance sufficient to satisfy its indemnification obligations set forth above. Independent Health shall have the right to inspect Vendor applicable insurance policies or other

13

evidence of coverage. Vendor agrees to notify Independent Health at least ten (10) days prior to any reduction or cancellation of its applicable insurance policies.

F.    **Remedies.** In the event of breach of any part of this Agreement by Vendor or any of Vendor's employees, agents or representatives, Independent Health may exercise every right or remedy at law or in equity available including action(s) for damages and/or injunction.

G.    **Choice of Law**. This Agreement shall be governed by the laws of the State of New York, notwithstanding conflict of law rules, unless otherwise preempted by applicable federal law.

H.    **Arbitration**. Any controversy or claim arising out of or relating to this Agreement shall be finally settled by arbitration under the rules of the American Health Lawyers Association ("AHLA") Dispute Resolution Service utilizing one (1) arbitrator who shall be chosen from a list of arbitrators maintained by the AHLA. Arbitration shall be heard in the County of Erie, New York. The parties agree that punitive damages may not be awarded at arbitration.

I.    **Notices**. Whenever under this Agreement one party is required to give notice to the other, such notice shall be deemed given if mailed by First Class United States Mail, postage prepaid or nationally recognized overnight carrier, and addressed as follows:

| | |
|---|---|
| Independent Health Association, Inc. | Independent Health Benefits Corporation |
| 511 Farber Lakes Drive | 511 Farber Lakes Drive |
| Williamsville, New York 14221 | Williamsville, New York 14221 |
| Attn:  Lawrence C. DiGiulio, Esq | Attn:  Lawrence C. DiGiulio, Esq. |
|     Vice President & |     Secretary |
|     General Counsel | |

DxID LLC
349 Commercial Street, Suite 2000
East Rochester, New York  14445

Either party may at any time change its address for notification purposes by mailing a notice stating the change and setting forth the new address.

J.    **Entire Agreement**. This Agreement, together with any Attachments or Exhibits, if any, sets forth the entire agreement between the Parties respecting its subject matter and supersedes all prior negotiation and agreements between the parties relating to the subject of this Agreement. No change, waiver or discharge of obligations arising under this Agreement shall be valid unless in writing and executed by the Parties.

14

K.  **Severability.** If any provision of this Agreement or of any exhibit attached hereto is held invalid or otherwise unenforceable, the enforceability of the remaining provision of this Agreement and any exhibit(s) shall not be impaired.

L.  **Waiver.** The failure of either party to insist in any one or more instances upon strict performance of any of the terms or provisions of this Agreement or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of such terms, provisions or options. No waiver by either party of any one or more of its rights or remedies shall be effective unless in writing and signed by the parties.

**IN WITNESS WHEREOF**, Independent Health and Vendor have caused this Agreement to be signed and delivered by their duly authorized representatives, as of the date set forth above.

**DxID LLC**

By: _____

Print Name: _Elizabeth A Gaffney_

Title: _CEO DxID_

**Independent Health Association, Inc.**

By: _Mark Johnson_

Print Name: _Mark Johnson_

Title: _EVP & CFO_

DxID BAA with IHA -IHBC 8-17-11

**Independent Health Benefits Corporation**

By:_____

Print Name:_____ **Michael W. Cropp, MD**

Title:_____**President**_____