# Ex. I



# DxID Global Coding Policy (v1.0)

The DxID Global Coding Policy serves as coding guidance for diagnoses that have been defined as continuing chronic, resolving chronic, and acute by the DxID Clinical Team. Diagnosis classifications are defined in 'DxID ICD-9 Classification and Policy Association.xls' and maintained by the DxID Business and Clinical Teams. The ICD-9-CM Official Guidelines for Coding and Reporting (Effective October 1, 2011), the American Hospital Association Coding Clinic, and the 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide serve as guiding documents for the DxID Global Coding Policy.

DxID recognizes that some chronic conditions may resolve with certain interventions and other chronic conditions will never completely resolve. An example of a chronic condition that may resolve with intervention is an abdominal aortic aneurysm (AAA). Abdominal aortic aneurysms are chronic conditions monitored by the physician until the AAA reaches 5cm; at that point surgical intervention is likely necessary. The AAA would cease to exist after surgical intervention. An example of a condition that will never completely resolve is multiple sclerosis. The DxID chronic condition policy includes a different set of rules for chronic conditions that may resolve. These conditions are specified in section II – Chronic Conditions That May Resolve.

The guiding principal of the DxID Global Coding Policy is to ensure that the source medical record documentation that supports each coded diagnosis be obtainable and demonstrate adherence to official coding guidelines. There is a global policy in orange text at the end of each subsection; continuing chronic condition polices are identified by a CC and by either an I (inpatient) or O (outpatient) followed by identifying acronyms (PMH = Past Medical History) specifying the location in the medical record. Chronic conditions that may resolve are identified by a CR and by either an I (inpatient) or O (outpatient) followed by identifying acronyms (PMH = Past Medical History) specifying the location in the medical record. Acute conditions are identified by an A and by either an I (inpatient) or O (outpatient) followed by identifying acronyms (PMH = Past Medical History) specifying the location in the medical record.

## Section I – Continuing Chronic Conditions

### A. Inpatient
Chronic diagnoses, defined by the DxID Clinical Team, documented in an inpatient medical record will be coded in accordance with the ICD-9-CM Official Guidelines for Coding and Reporting and the American Hospital Association Coding Clinic.

The 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide defines inpatient facilities:[1]

- Short-term (general and specialty) Hospitals
- Religious Non-Medical Health Care Institutions (formerly Christian Science Sanatoria)
- Long-term Hospitals

© 2012 DxID, LLC

- Rehabilitation Hospitals
- Children's Hospitals
- Psychiatric Hospitals
    1. Medical Assistance Facilities/ Critical Access Hospitals

## 1. History and Physical (H&P)

The 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide provides guidance on coding diagnoses listed on an H&P.[2]

**Inpatient Documentation – History and Physical (H&P) Guidance**
As previously mentioned CMS recommends submitting the complete inpatient medical record for a hospital inpatient stay. Some organizations have inquired about the use of the H&P as stand-alone documentation when submitting risk adjustment and medical records. The following guidance must be taken into account if organizations are considering these options.

- H&P submitted as part of the complete inpatient medical record

    o Will **not** contain reportable final/confirmed diagnoses
    o Typically contains admission symptoms and co-existing conditions as well as admission/working diagnoses, which may or may not be one of the final diagnoses for the inpatient admission

Note that discharge/final diagnoses– not the H&P alone –will be reviewed in accordance with the Inpatient ICD-9 coding guidelines.

- H&P submitted as an independent physician visit from an inpatient stay
    If a physician submits a separate claim/encounter based on his/her evaluation of the patient as reflected on the H&P

    o H&P (face-to-face encounter) is viewed as a physician visit
    o Reportable diagnoses documented in the H&P
        - Could be used as final
        - Could be used for risk adjustment; HOWEVER, The medical record documentation will be reviewed in accordance with the Outpatient ICD-9 coding guidelines

- H&P Conclusion
    o Risk Adjustment is based on final/confirmed diagnoses.
    o Risk adjustment diagnoses should only be submitted based H&P alone when there is an independent physician claim associated with the diagnosis.
    o Upon validation, if an organization submits the H&P as stand-alone documentation, the Outpatient guidelines will be applied to determine if there is a confirmed diagnosis.

Section PE.1.7.1 of the Joint Commission 2002 Hospital Accreditation Standards states, "The patient's history and physical examination, nursing assessment, and other screening assessments are completed within 24 hours of admission as an inpatient."[3]

© 2012 DxID, LLC

2

With the understanding that the H&P documentation is a part of a larger inpatient record, DxID will treat H&P documentation as an inpatient record. Co-existing chronic conditions documented on the H&P will be coded in accordance with the American Hospital Association Coding Clinic Guidance.[4]

Question:
We need to get clarification on the coding of chronic conditions.  One of the quality improvement organizations (QIOs) will not allow the inclusion of chronic obstructive pulmonary disease (COPD) as a secondary diagnosis when it is only mentioned as a history of COPD and no active treatment is documented.  Am I correct in stating the presence of a documented history of COPD in the physician history and physical on an inpatient record is enough to code COPD as a secondary diagnosis, since this is a chronic condition that always affects the patient care and treatment to some extent?

Answer:
As stated in Coding Clinic, July-August 1985, page 10, the criteria for selection of the conditions to be reported as "other diagnoses" include the severity of the condition, use or consideration of alternative measures in the treatment of the principal diagnosis due to a coexisting condition, increased nursing care required in the care of patients due to the disabling features of the coexisting condition, use of diagnostic or therapeutic services for the particular coexisting condition, the need for close monitoring of medications, or modifications of nursing care plans.

If there is documentation in the medical record to indicate that the patient has COPD, it should be coded.  Even if this condition is listed only in the history section with no contradictory information, the condition should be coded.  Chronic conditions such as, but not limited to, hypertension, Parkinson disease, COPD, and diabetes mellitus are chronic systemic diseases that ordinarily should be coded even in the absence of documented intervention or further evaluation.  Some chronic conditions affect the patient for the rest of his or her life and almost always require some form of continuous clinical evaluation or monitoring during hospitalization, and therefore should be coded.  This advice applies to inpatient coding.

Policy [CC.I.HP]: In the absence of contradictory information, confirmed continuing chronic conditions, as defined by the DxID Clinical Team, listed on an H&P will be coded.

## 2. Hospital Course
Each date of service from the time of admission to the time of discharge is considered part of the hospital course. Chronic diagnoses reported during the course of an inpatient hospital stay may be coded if they adhere to the ICD-9-CM Official Guidelines for Coding and Reporting.

For reporting purposes the definition for "other diagnoses" is interpreted as additional conditions that affect patient care in terms of requiring:

clinical evaluation; or
therapeutic treatment;
ordiagnostic procedures;
orextended length of hospital stay;
or increased nursing care and/or monitoring.

© 2012 DxID, LLC

3

The UHDDS item #11-b defines Other Diagnoses as "all conditions that coexist at the time of admission, that develop subsequently, or that affect the treatment received and/or the length of stay. Diagnoses that relate to an earlier episode which have no bearing on the current hospital stay are to be excluded."[3]

Co-existing chronic conditions documented during the hospital course will be coded in accordance with the American Hospital Association Coding Clinic Guidance.[4]

Question:

We need to get clarification on the coding of chronic conditions.  One of the quality improvement organizations (QIOs) will not allow the inclusion of chronic obstructive pulmonary disease (COPD) as a secondary diagnosis when it is only mentioned as a history of COPD and no active treatment is documented.  Am I correct in stating the presence of a documented history of COPD in the physician history and physical on an inpatient record is enough to code COPD as a secondary diagnosis, since this is a chronic condition that always affects the patient care and treatment to some extent?

Answer:

As stated in Coding Clinic, July-August 1985, page 10, the criteria for selection of the conditions to be reported as "other diagnoses" include the severity of the condition, use or consideration of alternative measures in the treatment of the principal diagnosis due to a coexisting condition, increased nursing care required in the care of patients due to the disabling features of the coexisting condition, use of diagnostic or therapeutic services for the particular coexisting condition, the need for close monitoring of medications, or modifications of nursing care plans.

If there is documentation in the medical record to indicate that the patient has COPD, it should be coded.  Even if this condition is listed only in the history section with no contradictory information, the condition should be coded.  Chronic conditions such as, but not limited to, hypertension, Parkinson disease, COPD, and diabetes mellitus are chronic systemic diseases that ordinarily should be coded even in the absence of documented intervention or further evaluation.  Some chronic conditions affect the patient for the rest of his or her life and almost always require some form of continuous clinical evaluation or monitoring during hospitalization, and therefore should be coded.  This advice applies to inpatient coding.

Policy [CC.I.HC]: In the absence of contradictory information, continuing chronic conditions, as defined by the DxID Clinical Team, documented during the hospital course will be coded.

## 3. Discharge summary

Discharge summaries contain a principal diagnosis and other diagnoses. All conditions documented on the final diagnostic statement should be coded in compliance with ICD-9-CM Official Guidelines for Coding and Reporting: "If the provider has included a diagnosis in the final diagnostic statement, such as the discharge summary or the face sheet, it should ordinarily be coded."[5]

Uncertain chronic diagnoses listed on a discharge summary should be coded in compliance with ICD-9-CM Official Guidelines for Coding and Reporting.

If the diagnosis documented at the time of discharge is qualified as "probable", "suspected", likely", "questionable", "possible", or "still to be ruled out" or other similar terms indicating uncertainty, code the condition as if it existed or was established. The bases for these

© 2012 DxID, LLC

4

guidelines are the diagnostic workup, arrangements for further workup or observation, and initial therapeutic approach that correspond most closely with the established diagnosis.

Policy [CC.I.DS]: Continuing Chronic conditions, both confirmed and suspected, documented on a final inpatient diagnostic statement will be coded.

## B. Outpatient

Chronic diagnoses, defined by the DxID Clinical Team, documented in an outpatient medical record will be coded in accordance with the ICD-9-CM Official Guidelines for Coding and Reporting and The 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide. The American Hospital Association Coding Clinic is used as guidance for the DxID outpatient chronic condition policy.

The 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide defines outpatient facilities:[6]

- Short-term (general and specialty) Hospitals
- Medical Assistance Facilities/Critical Access Hospitals
- Community Mental Health Centers 1
- Federally Qualified Health Centers 2/ Religious Non-Medical Health Care Institutions (formerly Christian Science Sanatoria)
- Long-term Hospitals
- Rehabilitation Hospitals
- Children's Hospitals
- Psychiatric Hospitals
- Rural Health Clinic (Free-standing and Provider-Based) 3

### 1. Assessment

Diagnoses documented in the assessment of a face-to-face encounter will be coded in accordance with the ICD-9-CM Official Guidelines for Coding and Reporting. "Code all documented conditions that coexist at the time of the encounter/visit, and require or affect patient care treatment or management."[7]

Policy [CC.O.A]: Continuing Chronic conditions, defined by the DxID Clinical Team, documented in the assessment of a face-to-face encounter will be coded.

### 2. Problem List

Chronic diagnoses, defined by the DxID Clinical Team, documented on a signed and dated problem list will be coded in accordance with the ICD-9-CM Official Guidelines for Coding and Reporting and The 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide. For the purposes of this policy, DxID refers to problem lists as problem lists that are embedded in a face-to-face encounter note that are signed and dated by an acceptable provider at the time of the visit.

DxID looks to the Centers for Medicare and Medicaid Services (CMS) for guidance on coding chronic diagnoses on a signed and dated problem list. As of May 1, 2012, the Medicare Advantage Customer Service and Support website (www.csscoperations.com) contained frequently asked questions from the Calendar Year 2004 Risk Adjustment Data Validation (RADV) audit.

© 2012 DxID, LLC

5

Q22: If the problem list is the only record capable of being obtained, and no signed and dated medical record can be found to support the HCC, should the plan send the problem list or check that the medical record cannot be located or provided?

A22: Sometimes a problem list can be used to code a condition - but under specific circumstances. CMS gave guidance on Problem Lists on page 9 of the instructions document. If you send in a problem list, please make sure the date indicated on the coversheet matches the date of the diagnosis on the problem list and that the practitioner signs the problem list.[8]

The 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide provides additional guidance on problem lists.

Although the term "problem list" is commonly used with regard to ambulatory medical record documentation, a universal definition does not exist. The problem list is generally used by a coder to gain an overall clinical picture of a patient's condition(s). Problem lists are usually supported by other medical record documentation such as SOAP notes (subjective, objective, assessment, plan), progress notes, consultation notes, and diagnostic reports.

For CMS' risk adjustment data validation purposes, an acceptable problem list must be comprehensive and show evaluation and treatment for each condition that relates to an ICD-9 code on the date of service, and it must be signed and dated by the physician or physician extender. [9]

DxID relies on the 1997 Documentation Guidelines for Evaluation and Management Services to determine what treatment includes. "Treatment includes a wide range of management options including patient instructions, nursing instructions, therapies, and medications."[10]
The CMS guidance on problem lists is not entirely consistent with guidance listed elsewhere in the training material. "The source medical record documentation that supports each coded diagnosis must be obtainable and demonstrate adherence to official coding guidelines."[11]
The ICD-9-CM Official Guidelines for Coding and Reporting state, "Code all documented conditions that coexist at the time of the encounter/visit, and require or affect patient care treatment or management."[7]

Conditions that require or affect patient care treatment, or management are not well defined by CMS or the official coding guidelines. DxID looks to the American Hospital Association for clarity on what conditions require or affect patient care treatment, or management. While intended for an inpatient setting, guidance from the American Hospital Association Coding Clinic, Third Quarter 2007 Pages: 13-14 can be used to define chronic conditions:

Chronic conditions such as, but not limited to, hypertension, Parkinson disease, COPD, and diabetes mellitus are chronic systemic diseases that ordinarily should be coded even in the absence of documented intervention or further evaluation. Some chronic conditions affect the patient for the rest of his or her life and almost always require some form of continuous clinical evaluation or monitoring during hospitalization, and therefore should be coded. This advice applies to inpatient coding.[4]

Additionally, DxID relies on CMS guidance to define chronic diagnoses that affect patient care treatment, or management.

© 2012 DxID, LLC

6

Co-existing conditions include chronic, ongoing conditions such as diabetes (250.XX, HCCs 15-19), congestive heart failure (428.0, HCC 80), atrial fibrillation (427.31, HCC 92), chronic obstructive and pulmonary disease (496, HCC 108). These diseases are generally managed by ongoing medication and have the potential for acute exacerbations if not treated properly, particularly if the patient is experiencing other acute conditions. It is likely that these diagnoses would be part of a general overview of the patient's health when treating co-existing conditions for all but the most minor of medical encounters. [12]

While this guidance is clear that certain diagnoses are relevant to the treatment of a patient, DxID looks to coding training material for additional support that coding chronic conditions on a signed and dated problem list is appropriate. The 2010 Step-by-Step Medical Coding book by Carol J. Buck is considered a leading source for preparing coders for coding exams. Ms. Buck discusses a portion of the ICD-9 Official Coding Guidelines.

ICD-9 Official Guidelines for Coding and Reporting:

List first the ICD-9-CM code for the diagnosis, condition, problem, or other reason for encounter/visit shown in the medical record to be chiefly responsible for the services provided. List additional codes that describe any coexisting conditions. In some cases the first-listed diagnosis may be a symptom when a diagnosis has not been established (confirmed) by the physician.[7]

Carol J. Buck:

You have already had practice at selecting the first-listed diagnoses and you know that it is possible for the first-listed diagnosis to be a symptom. The important information in this guidance is that additional codes should be assigned for any coexisting conditions that are present or treated during that visit or encounter. Sometimes there is more than one symptom that is present.[13]

The training material for coders instructs them to assign codes for any coexisting conditions are present or treated during an encounter. Chronic conditions on a signed and dated problem list without contradictory information should be considered co-existing conditions. The initial CMS guidance stating a problem list must show treatment is less clear in the context of other official guidance.

Is it appropriate to code a co-existing condition that is documented on a signed and dated problem list? As CMS says, these problems would likely be a part of the general overview for all but the most minor of medical encounters. The initial guidance from CMS may have been due to the fact that providers used problem lists inconsistently. As meaningful use continues to be defined, much of the uncertainty with problem lists will resolve.

Problem List and Meaningful Use
On February 17, 2009, President Obama signed the American Recovery and Reinvestment Act. As part of the act, Congress designated $25.9 billion to The Health Information Technology for Economic and Clinical Health (HITECH) Act; $20.6 billion would be designated to incent Medicare and Medicaid Providers to adopt EHRs.[14]

© 2012 DxID, LLC

7

Each eligible provider can receive up to $44,000 over five years under the incentive program.[15] In order to receive payment, each eligible provider must demonstrate meaningful use of an EHR system. Meaningful use is divided into three stages spread out over five years.

- Stage 1 (2011 and 2012) sets the baseline for electronic data capture and information sharing.
- Stage 2 (expected to be implemented in 2013)
- Stage 3 (expected to be implemented in 2015) will continue to expand on this baseline and be developed through future rule making.

The Department of Health and Human Services published the final rule for meaningful use stage 1 on July 28, 2010. The final rule includes both a core set and a menu set of objectives that are specific to eligible professionals or eligible hospitals and CAHs. Providers must meet the following Stage 1 meaningful use requirements to qualify for incentive payments in 2011 and 2012.

- For eligible professionals, there are a total of 25 meaningful use objectives. To qualify for an incentive payment, 20 of these 25 objectives must be met.
    - There are 15 required core objectives.
    - The remaining 5 objectives may be chosen from the list of 10 menu set objectives.
- For eligible hospitals and CAHs, there are a total of 24 meaningful use objectives. To qualify for an incentive payment, 19 of these 24 objectives must be met.
    - There are 14 required core objectives.
    - The remaining 5 objectives may be chosen from the list of 10 menu set objectives.

One of the core objectives for eligible professionals involves maintaining an up-to-date problem list of current and active diagnoses.[16]

**Eligible Professional**
**Meaningful Use Core Measures**
**Measure 3 of 15**
Stage 1Date issued: November 7, 2010

Maintain Problem List
Objective: Maintain an up-to-date problem list of current and active diagnoses.
Measure: More than 80 percent of all unique patients seen by the EP have at least one entry or an indication that no problems are known for the patient recorded as structured data.
Exclusion: No exclusion

**Table of Contents**
- Definition of Terms
- Attestation Requirements
- Additional Information **Definition of Terms**

**Problem List** – A list of current and active diagnoses as well as past diagnoses relevant to the current care of the patient.

**Unique Patient** – If a patient is seen by an EP more than once during the EHR reporting period, then for purposes of measurement that patient is only counted once in the denominator for the measure. All the measures relying on the term "unique patient" relate to what is

© 2012 DxID, LLC

8

contained in the patient's medical record. Not all of this information will need to be updated or even be needed by the provider at every patient encounter. This is especially true for patients whose encounter frequency is such that they would see the same provider multiple times in the same EHR reporting period.

**Up-to-date** – The term "up-to-date" means the list is populated with the most recent diagnosis known by the EP. This knowledge could be ascertained from previous records, transfer of information from other providers, diagnosis by the EP, or querying the patient.

The meaningful use requirements provide structure and continuity to the problem list. As a result, problem lists should be considered for the purposes of risk adjustment. Providers must maintain the data to ensure they are meaningfully using the HER and as stated by CMS, the problem list is, "a list of current and active diagnoses as well as past diagnoses relevant to the current care of the patient." Co-existing chronic conditions on signed and dated problem lists may be relevant for risk adjustment.

Policy [CC.O.PL]: Continuing chronic conditions, defined by the DxID Clinical Team, documented on a signed and dated problem list will be coded.

## 3. Past Medical History

The majority of medical records contain a past medical history. Providers do not consistently use the term past medical history. Chronic diseases can unintentionally end up as a "history of" the disease. CMS recognizes this and makes note of it in the 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide.[17]

**Use of "history of."** In ICD-9-CM, "history of" means the patient no longer has the condition and the diagnosis often indexes to a V code not in the HCC models. A physician can make errors in one of two ways with respect to these codes. One error is to code a past condition as active. The opposite error is to code as "history of" a condition when that condition is still active. Both of these errors can impact risk adjustment.

**Example: 8**
The diagnosis statement "history of hip fracture" is not coded as a current hip fracture 820.8, HCC 158), but with a V code for orthopedic aftercare (V54.XX) or history of injury (V15.5), if appropriate. Neither "history of" code is in the HCC models. If a patient has a current acute condition, then the "history of" wording should not be used to describe the recent occurrence.

**Example: 9**
The physician may actually intend to communicate that a condition is ongoing, but note the "history of" a condition. An example of this is "history of Hepatitis C" (V12.09 personal history of other infectious disease). Hepatitis C generally presents as a chronic condition (070.54, HCC 27) that is rarely fully eradicated. While assigning V12.09 is not necessarily an example of incorrect coding, it may indicate that the physician office is not coding correctly. Again, communication and clear documentation are essential to make the appropriate determination.

While CMS' guidance is helpful, it seems to contradict some of the governing bodies of coding. The American Hospital Association Coding Clinic provides several examples of when it is appropriate to code "history of" diagnoses as active conditions.[4]

Question:

© 2012 DxID, LLC

9

We need to get clarification on the coding of chronic conditions.  One of the quality improvement organizations (QIOs) will not allow the inclusion of chronic obstructive pulmonary disease (COPD) as a secondary diagnosis when it is only mentioned as a history of COPD and no active treatment is documented.  Am I correct in stating the presence of a documented history of COPD in the physician history and physical on an inpatient record is enough to code COPD as a secondary diagnosis, since this is a chronic condition that always affects the patient care and treatment to some extent?

Answer:
As stated in Coding Clinic, July-August 1985, page 10, the criteria for selection of the conditions to be reported as "other diagnoses" include the severity of the condition, use or consideration of alternative measures in the treatment of the principal diagnosis due to a coexisting condition, increased nursing care required in the care of patients due to the disabling features of the coexisting condition, use of diagnostic or therapeutic services for the particular coexisting condition, the need for close monitoring of medications, or modifications of nursing care plans.

If there is documentation in the medical record to indicate that the patient has COPD, it should be coded.  Even if this condition is listed only in the history section with no contradictory information, the condition should be coded.  Chronic conditions such as, but not limited to, hypertension, Parkinson disease, COPD, and diabetes mellitus are chronic systemic diseases that ordinarily should be coded even in the absence of documented intervention or further evaluation.  Some chronic conditions affect the patient for the rest of his or her life and almost always require some form of continuous clinical evaluation or monitoring during hospitalization, and therefore should be coded.  This advice applies to inpatient coding.

While DxID recognizes this AHA guidance is directly related to inpatient coding, it is the only clear definition of chronic conditions. The key statement being, "chronic conditions affect the patient for the rest of his or her life." Using the American Hospital Association definition, chronic conditions listed in the past medical history should be coded in compliance with the ICD-9 Official Guidelines for Coding and Reporting: "Code all documented conditions that coexist at the time of the encounter/visit, and require or affect patient care treatment or management" especially since it is known that physicians may use the term "past medical history" as a descriptor for long standing problems. The American Hospital Association does recognize that some conditions are listed in the history yet affect patient care treatment, and management.
The American Hospital Association provides additional guidance on "history of" diagnoses.[18]

Question:
A patient is admitted for left total hip replacement because of advanced degenerative joint disease. The patient has a history of congestive heart failure and is currently taking Digoxin and Lasix for that condition. The patient is continued on these medications during her hospitalization and shows no sign of cardiac decompensation during the hospital course. Should congestive heart failure be coded as a secondary diagnosis and if so, what code should be assigned?

Answer:
Yes, congestive heart failure (428.0) is a condition under treatment and should be coded as a secondary condition.

© 2012 DxID, LLC

10

The guidance above makes the distinction that the condition is under treatment and should be coded. Using the inpatient guidance to structure the DxID policy led us to examine the use of "history of" in an outpatient setting. The 2010 Step-by-Step Medical Coding book by Carol J. Buck is considered a leading source for preparing coders for coding exams. Ms. Buck cautions her readers during the chapter on outpatient coding and reporting.[19]

> CAUTION Often, the patient record states that there is a "history of" a disease: for example, "history of diabetes mellitus." This does not mean that the patient no longer has diabetes mellitus, but that the patient's medical history includes diabetes mellitus. You would not assign a V code to indicate a previous history of diabetes mellitus, but instead would assign the code for the current disease of diabetes mellitus (250.0X). If there is any question regarding the current status of the disease, check with the physician. You may also want to offer some physician education regarding the documentation of past history of diseases.

Clearly the use of "history of" causes some confusion in medical records. In developing the chronic condition policy for "history of" diagnoses, DxID relies on the official coding guidelines, which state, "Chronic diseases treated on an ongoing basis may be coded and reported as many times as the patient receives treatment and care for the condition"[5] and "Code all documented conditions that coexist at the time of the encounter/visit, and require or affect patient care treatment or management."[20]

The combination of guidance from various authorities led DxID to establish the following policy for "history of" chronic diagnoses and diagnoses listed in the past medical history.

Policy [CC.O.PMH]: Continuing Chronic conditions, defined by the DxID Clinical Team, that are documented as "history of" will be coded. Continuing Chronic diagnoses listed in the "Past Medical History" will be coded.

# Section II – Chronic Conditions That May Resolve

DxID recognizes that some chronic conditions may resolve with certain interventions. Due to the high variability in medical record documentation, DxID requires additional evidence in the lack of medical intervention to support chronic conditions that may resolve as defined by the DxID Clinical Team.

The foundation of Section I, Continuing Chronic Conditions, is applicable to chronic conditions that may resolve and to the following policies.

## Policy [CR.I.HP] – Inpatient History & Physical
Chronic conditions that may resolve, as defined by the DxID Clinical Team, listed in an inpatient history and physical will be coded in the absence of medical intervention. Medical intervention is defined on a diagnosis level and included in the DxID Diagnosis Specific Coding Policy.

## Policy [CR.I.HC] – Inpatient Hospital Course
Chronic conditions that may resolve, as defined by the DxID Clinical Team, listed in during an inpatient hospital course will be coded in the absence of medical intervention. Medical intervention is defined on a diagnosis level and included in the DxID Diagnosis Specific Coding Policy.

© 2012 DxID, LLC

11

## Policy [CR.I.DS] – Inpatient Diagnostic Statement
Chronic conditions that that may resolve, as defined by the DxID Clinical Team, listed on the final inpatient diagnostic statement will be coded in the absence of medical intervention. Medical intervention is defined on a diagnosis level and included in the DxID Diagnosis Specific Coding Policy.

## Policy [CR.O.A] – Assessment
Chronic conditions may resolve, as defined by the DxID Clinical Team, listed in an assessment of a face-to-face encounter will be coded in the absence of medical intervention. Medical intervention is defined on a diagnosis level and included in the DxID Diagnosis Specific Coding Policy.

## Policy [CR.O.PL] – Problem List
Chronic conditions that may resolve, as defined by the DxID Clinical Team, listed on a signed and dated problem list, embedded in an encounter note of a face-to-face encounter will be coded in the absence of medical intervention. Medical intervention is defined on a diagnosis level and included in the DxID Diagnosis Specific Coding Policy.

## Policy [CR.O.PL] – Past Medical History
Chronic conditions that may resolve, as defined by the DxID Clinical Team, listed either as "history of" or listed in the past medical history of a face-to-face encounter will be coded in the absence of medical intervention. Medical intervention is defined on a diagnosis level and included in the DxID Diagnosis Specific Coding Policy.


# Section III – Acute Conditions

Acute conditions, as defined by the DxID Clinical Team, require the presence of active treatment in order to be coded for the purposes of risk adjustment. DxID has defined treatment as the following:

- Referral to a specialist
- Ordering / Reviewing of labs
- Ordering / Reviewing of x-rays or other tests / test results
- Prescribing / Refilling / Reviewing / Adjusting medications
- Prescribing / Renewing / Reviewing / Adjusting medical supplies, equipment and subscriptions
- Counseling / observation to include:
  - activity level
  - diet management
  - monitoring of overall health
  - adherence to medication regimen
  - coping skills related to overall health
  - risk reduction (ie: smoking)
  - goal setting
  - patient skills or functioning assessment
  - patient self assessment review
  - patient education

Acute conditions have specific treatments that are defined in the DxID Diagnosis Specific Coding Policy.

© 2012 DxID, LLC

## Policy [Acute] – All Acute Conditions
Acute conditions, as defined by the DxID Clinical Team, require additional evidence of treatment to be coded. Treatment is defined by diagnosis in the DxID Diagnosis Specific Coding Policy.

## Change History
- May 22, 2012 – First draft (v1.0) of DxID Chronic Condition Policy.
- May 30, 2012
  - Extra space deleted from endnote #15; policies at the end of each section changed to orange; policy nomenclature (example: O.PMH) assigned.
  - Policy [I.HC] changed from: "The official coding guidance and the American Hospital Association guidance on coding chronic conditions (Coding Clinic, Third Quarter 2007 Pages: 13-14) make it is clear that co-existing chronic conditions documented during an inpatient stay should be coded as long as there is no contradictory information" to "In the absence of contradictory information, chronic conditions, as defined by the DxID Clinical Team, documented during the hospital course will be coded"; Coding Clinical added as backup for the [I.HC] policy.
- July 11, 2012 – Changed to a global coding policy rather than a chronic condition policy. Included Betsy Gaffney's initial decisions on problem lists and past medical history. Divided the policy into Section I and Section II to differentiate between chronic conditions that may resolve and those that don't resolve.

---

[1] 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide, p. 56

[2] 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide, p. 173

[3] Joint Commission 2002 Hospital Accreditation Standards

[4] American Hospital Association Coding Clinic, Third Quarter 2007 Pages: 13-14

[5] ICD-9-CM Official Guidelines for Coding and Reporting (Effective October 1, 2011) American Hospital Association Coding Clinic, p. 91

[6] 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide, p. 57

[7] ICD-9-CM Official Guidelines for Coding and Reporting (Effective October 1, 2011), p. 94

[8] CY 2004 Risk Adjustment Data Validation Medical Record Request and Submission Process Frequently Asked Questions (April 18, 2005)

[9] 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide, p. 177

[10] 1997 Documentation Guidelines for Evaluation and Management Services, p. 44

[11] 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations

© 2012 DxID, LLC

13

Participant Guide, p. 144

[12] 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide, p. 148

[13] Buck, Carol J. 2010 Step-by-Step Medical Coding, p. 87

[14] Health and Human Services Recovery Act-Funded Programs;
       http://www.hhs.gov/recovery/programs/index.html#Health

[15] CMS EHR Incentive Program; https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms/index.html?redirect=/EHRIncentivePrograms/

[16] EHR Incentive Program; Eligible Professional Meaningful Use Core Measures; Measure 3 or 15; Stage 1; November 7, 2010

[17] 2008 Risk Adjustment Data Technical Assistance For Medicare Advantage Organizations Participant Guide, p. 151

[18] American Hospital Association Coding Clinic, Third Quarter 1991 Page: 18

[19] Buck, Carol J. 2010 Step-by-Step Medical Coding, p. 85

[20] ICD-9-CM Official Guidelines for Coding and Reporting (Effective October 1, 2011) American Hospital Association Coding Clinic, p. 90

© 2012 DxID, LLC

14