# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, ex rel.,
TERESA ROSS

                        Plaintiff,

       v.

INDEPENDENT HEALTH CORPORATION,
DXID, LLC, BETSY GAFFNEY, and
INDEPENDENT HEALTH ASSOCIATION,
INC.,

                        Defendants.

Docket No. 12-CV-0299 (WMS)

## INDEPENDENT HEALTH DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE RELATOR'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 31 U.S.C. § 3730(d)

Vincent E. Doyle III, Esq.
Bryan P. Kroetsch, Esq.
Samantha B. Gier, Esq.
CONNORS LLP
*Attorneys for Defendants*
*Independent Health Corporation,*
*DXID, LLC, and*
*Independent Health Association, Inc.*
1000 Liberty Building
Buffalo, New York 14202
Tel:  (716) 852-5533

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... 2

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ........................................................................................ 2

SUMMARY OF ARGUMENT ................................................................. 5

ARGUMENT ............................................................................................. 6

   I.   The Relator Has Not Met Her Burden of Demonstrating the Reasonableness of the Attorneys' Requested Hourly Rates. ......................................... 9

       A.   Under the Forum Rule, the Relator's Attorneys Are Entitled to Only Prevailing Hourly Rates in the Western District of New York. ........... 10

       B.   The Relator's Attorneys Should Not Be Paid for Past Work at Higher Rates. ............................................................................................. 15

       C.   The Relator's Counsels' Requested Hourly Rates Are Not Reasonable for the Relevant Time Periods. ...................................................... 16

       D.   Prevailing Rates in the Western District of New York in the Relevant Time Periods Are Much Lower Than the Relator's Requests.............. 18

       E.   Even If Prevailing Rates for the District of Columbia Applied, They Are Much Lower Than Those Which the Relator Requests. ............... 19

   II.   The Relator Has Not Met Her Burden of Demonstrating the Reasonableness of the Number of Hours Expended on This Matter. ......................................... 21

       A.   The Relator's Counsel Should Not Receive an Award for Entries That Are Vague, Excessive, or Redundant...................................................... 23

       B.   The Relator's Counsels' Time Entries Reflect Top-Heavy Billing........ 29

       C.   The Relator's Counsels' Time Entries Contain Travel Time Which is Improperly Billed. ...................................................................... 29

       D.   The Relator's Counsels' Time Entries Warrant a Reduction In The Number of Hours Billed. ............................................................. 30

   III.  The IH Defendants' Complex Financial Situation Merits a Downward Adjustment. ................................................................................. 31

CONCLUSION............................................................................................ 32

# TABLE OF AUTHORITIES

Page(s)

## Cases

*United States ex rel. Raggio v. Seaboard Marine, Ltd.*,
No. 1:10-cv-01908-BJR, 2017 WL 2591288 (D.D.C. May 4, 2017) ........................ 20

*Capax Discovery, Inc. v. AEP RSD Invs. LLC.*,
1:17-CV-00500-CCR, 2023 WL140528 (W.D.N.Y. Jan. 10, 2023) ................... 17, 30

*Rubin v. HSBC Bank USA, NA*,
__ F.Supp.3d __, 2025 WL 248253 (E.D.N.Y. Jan. 21, 2025)................................. 10

*United States v. Community Health Sys., Inc.*,
No. Civ.A. H-09-1565, 2015 WL 3386153 (S.D. Tex. May 4, 2015) ...................... 13

*United States ex rel. Yasti v. Nagan Constru.*,
No. 17-Civ-7163, 2021 WL 1063437 (S.D.N.Y. Mar. 18, 2021)........................ 23, 30

*Beastie Boys v. Monster Energy Co.*,
112 F.Supp. 3d 31 (S.D.N.Y. 2015) ........................................................................ 25

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................................................. 7

*Broker Genius Inc. v. Seat Scouts LLC*,
No. 17-CV-8627 (SHS), 2019 WL 3773856 (S.D.N.Y. Aug. 12, 2019) ................... 23

*Brown v. Mustang Sally's Spirits and Grill, Inc.*,
No. 12-CV-429S, 2013 WL 5295655 (W.D.N.Y. Sept. 18, 2013)................. 8, 10, 17

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. Of Pomona*,
188 F.Supp. 3d 333 (S.D.N.Y. 2016) ................................................................. 22, 24

*Savino v. Comput. Credit*,
71 F.Supp.2d 173 (E.D.N.Y. 1999)........................................................................... 7

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
246 F.3d 142 (2d Cir. 2001)..................................................................................... 17

*Cruz v. Local Union No. 3 of IBEW*,
34 F.3d 1148 (2d Cir. 1994)...................................................................................... 7

*Faraci v. Hickey-Freeman Co., Inc.*,
    607 F.2d 1025 (2d. Cir. 1979).............................................................. 32

*Francois v. Mazer*,
    523 Fed.Appx. 28 (2d. Cir. 2013) ....................................................... 23

*Frommert v. Conkright*,
    223 F.Supp.3d 140 (W.D.N.Y. 2016)............................... 15, 16, 22, 25

*Gesuladi v. Laws Const. Corp.*,
    759 F.Supp. 2d 432 (S.D.N.Y. 2010) .................................................. 31

*Grant v. Martinez*,
    973 F.2d 96 (2d. Cir. 1992)................................................................... 7

*Guardians Ass'n of Police Dep't of New York v. City of New York*,
    133 F. App'x 785 (2d Cir. 2005) ........................................................ 23

*Hallmark v. Cohen & Slamowitz, LLP*,
    378 F.Supp. 3d 222 (W.D.N.Y. 2019).................................................. 10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................... 7, 8, 21

*Hopple v. Cap. Link Mgmt., LLC.*,
    No. 21-CV-805S, 2023 WL 8824959 (W.D.N.Y. Dec. 21, 2023) ............... 7, 8

*HVT, Inc. v. Port Auth. Of New York and New Jersey*,
    No. 15-Civ-5867, 2018 WL 6079932 (E.D.N.Y. Nov. 21, 2018)........... 9, 19

*Imbeault v. Rick's Cabaret Int'l, Inc.*,
    No. 08-Civ-5458, 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009)............... 30

*In re Eastman Kodak Erisa Litig.*,
    213 F.Supp. 3d 503 (W.D.N.Y. 2016)....................................... 22, 28, 29

*In re Painwebber Ltd. P'ships. Litig.*,
    No. Civ. 8547 (SHS), 2003 WL 21787410 (S.D.N.Y. Aug. 4, 2003) ......... 15, 16

*In re Terrorist Attacks on September 11, 2001*,
    No. 03-MDL-1570, 2015 WL 6666703 (S.D.N.Y. Oct. 28, 2015)........... 20

*Jackson v. Cassellas*,
    959 F.Supp. 164 (W.D.N.Y. 1997).................................................. 15, 16

*Johnson v. New York City Transit Auth.*,
    823 F.2d 31 (2d Cir. 1987)................................................................. 8, 31

*Kirsch v. Fleet Street, Ltd.*,
    148 F.3d 149 (2d. Cir. 1998)................................................................. 23

*Matusick v. Erie County Water Auth.*,
    757 F.3d 31 (2d. Cir. 2014)................................................................. 29

*McGaffigan v. City of Rochester*,
    No. 21-CV-6546-FPG, 2023 WL 415098 (W.D.N.Y. Jan. 26, 2023)........................ 14

*Millea v. Metro-N.R. Co.*,
    658 F.3d 154 (2d Cir. 2011)................................................................. 8

*Mr. X v. Education Dep't*,
    20 F.Supp. 2d 561 (S.D.N.Y. 1998)........................................................ 27

*Myree v. Local 41, Intern. Broth. Of Elec. Workers*,
    847 F.Supp. 1059 (W.D.N.Y. 1994)........................................................ 15

*Nat'l Labor Relations Board v. Schmidt*,
    23-MC-51, 2024 WL 967225 (S.D.N.Y. Mar. 5, 2024)...................................... 9, 19

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983)............................................................... 15, 16

*Ortiz v. Stambach*,
    657 F.Supp. 3d 243 (W.D.N.Y. 2023)................................................... 8, 17, 23

*Parks v. Saltsman*, No. 20-CV-6384-FPG, 2024 WL 440994 (W.D.N.Y. Oct. 8, 2024)
    ................................................................................................. 14

*Parker v. Time Warner Ent. Co.*,
    631 F.Supp. 2d 242 (E.D.N.Y. 2009)...................................................... 15

*Payne v. Allied Interstate, Inc.*,
    No. 12-cv-6136, 2013 WL 5574641 (W.D.N.Y. Oct. 9, 2013)............................... 28

*Peacock v. City of Rochester*,
    No. 6:13-CV-6046, 2016 WL 4150445 (W.D.N.Y. Aug. 5, 2016)...................... 10, 11

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)........................................................................... 7

*Perdue v. Kenny A. ex rel. Winn,*
    559 U.S. 542 (2010) ................................................................................ 8

*Reply All Corp. v. Gimlet Media, Inc.,*
    No. 15-CV-4950, 2024 WL 3855990 (E.D.N.Y. Mar. 25, 2024) .............................. 13

*Retained Realty, Inc. v. Spitzer,*
    643 F.Supp.2d 228 (D. Conn. 2009) ...................................................................... 27

*Safranek v. Wormuth,*
    No. 23 Civ 5985, 2024 WL 5186599 (S.D.N.Y. Dec. 19, 2024) ........................ 23, 29

*Severstal Wheeling, Inc. v. WPN Corp.,*
    No. 10 Civ. 954, 2016 WL 1611501 (S.D.N.Y. Apr. 21, 2016) .............................. 22

*Simmons v. Ferrigno,*
    No. 17-cv-6176(FPG), 2024 WL 5223584 (W.D.N.Y. Dec. 26, 2024) .................... 22

*Simmons v. New York City Transit Auth.,*
    575 F.3d 170 (2d Cir. 2009) .................................................................... 9, 10, 14

*Spalluto v. Trump Intern. Hotel & Tower,*
    No. 04 Civ. 7497, 2008 WL 4525372 (S.D.N.Y. Oct. 2, 2008) .............................. 24

*Toliver v. County of Sullivan,*
    957 F.2d 47 (2d Cir. 1992) .................................................................................. 31

*United States ex rel. Doe v. Acupath Laboratories, Inc.,*
    No. CV 10-4819, 2015 WL 1293019 (E.D.N.Y. Mar. 19, 2015) .............................. 13

*United States ex rel. Doe v. Biotronik, Inc.,*
    No. 2:09-cv-3617-KJM-EFB, 2015 WL 6447489 (E.D. Cal. Oct. 23, 2015) ............ 17

*United States ex rel. Ellis v. Sheikh,*
    583 F.Supp. 2d 434 (W.D.N.Y. 2008) .................................................................. 11

*United States ex rel. Baker v. Cmty. Health Sys., Inc.,*
    Civ. No. 05-279 WJ/ACT,2012 WL 10914086 (D.N.M. Aug. 9, 2013) ................... 17

*United States ex rel. Emery v. Belcon Ents. Inc.,*
    No. 2:14-CV-00483-DBH, 2016 WL 7494855 (D. Me. Dec. 30, 2016)... 11, 12, 13, 24

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.,*
    No. 12-CV-275, 2015 WL 1726474 (S.D.N.Y. Apr. 15, 2015) ................................ 31

*United States ex rel. Nichols v. Comput. Scis. Corp.,*
  499 F.Supp. 3d 32 (S.D.N.Y. 2020) ........................................................ 22

*United States ex rel. Savage v. Washington Closure Hanford,*
  No. CV-10-5051-SMJ, 2019 WL 13169887 (E.D. Wa. Aug. 27, 2019) ................... 17

*United States ex rel. Schwartz v. Document Reprocessors of N.Y., Inc.,*
  692 F.Supp.3d 71 (W.D.N.Y. 2023) ........................................................ 12

*United States ex rel. Tommasino v. Guida,*
  No. 10-CV-4644, 2017 WL 878587 (E.D.N.Y. Mar. 6, 2017) ............................. 7, 26

*United States ex rel. Wood v. Avalign Tech., Inc.,*
  No. 14-CIV-4958, 2020 WL 255115 (S.D.N.Y. May 20, 2020) ......................... 10, 30

*United States v. Carranza,*
  __F.Supp.3d__, 2024 WL 4314713 (S.D.N.Y. Sept. 27, 2024) ................... 10, 22, 30

*United States v. Dynamic Visions Inc.,*
  307 F.R.D. 299 (D.D.C. 2015) ........................................................ 20

## **Statutes**

31 U.S.C. § 3730(d) ........................................................ 1, 7

## **Regulations**

28 C.F.R. § 0.160 (a)(2) ........................................................ 4, 31, 32

## PRELIMINARY STATEMENT

Defendants Independent Health Corporation ("IHC"), Independent Health Association ("IHA"), and DxID, LLC (collectively "IH Defendants"), submit this Memorandum of Law in opposition to the Relator's fee application for nearly $4 million in attorneys' fees pursuant to 31 U.S.C. § 3730(d).

Although the IH Defendants concede that the Relator is entitled under the law to an award of reasonable fees, the Relator's assertion that she has amassed $3,999,517.25 in attorneys' fees is unreasonable under any calculation. The Relator bears the burden of demonstrating that her attorneys' fees are reasonable, and she has not met this burden.

The Relator requests that her attorneys' fees be compensated at rates greater than those in any forum in the nation, and also requests that they be paid at current 2025 rates, despite much of the work occurring years ago—even as long as thirteen years ago. In addition, the Relator's fee application reveals a pattern of top-heavy billing and is replete with time entries that are vague, duplicative, or otherwise excessive.

Simply put, the rates the Relator seeks to charge are well beyond the prevailing rates awarded in similar complex litigation in the Western District of New York, the rates awarded across the nation, and, in fact, common sense. And, the number of attorneys' hours allegedly incurred on this matter are excessive and supported by only vague time entries. Based on the IH Defendants calculations contained herein, this Court should reduce the Relator's requested fees to **$409,920.74**, or whatever other reasonable amount this Court deems appropriate.

## BACKGROUND

In April 2012, the Relator Teresa Ross, a former Director of Risk Adjustment at Group Health Cooperative, filed a *qui tam* complaint under seal against IHC[1], IHA[2], DxID[3], Betsy Gaffney[4], and Group Health Cooperative[5] ("GHC"). Ms. Ross's allegations involved a series of disagreements she had with GHC and DxID over how to interpret informal coding guidance published by the Centers for Medicare and Medicaid Services ("CMS").

Over the next seven years, the Government filed fifteen requests to extend its intervention deadline. Eventually, on June 21, 2019, the Government filed a notice that it would not intervene in Ms. Ross's suit at that time. Thereafter, this Court ordered the *qui tam* complaint to be unsealed. Dkt. Nos. 62-63.

On October 6, 2019, both GHC and the IH Defendants fully briefed and submitted motions to dismiss Ms. Ross's complaint. Dkt. Nos. 91, 94. One month later, the Relator opposed the motions (Dkt. Nos. 102, 103), and on January 23, 2020, GHC and the IH Defendants filed their replies. Dkt. Nos. 103, 106.

On the same day the parties filed their replies, the Government changed course and sought leave to intervene in the Relator's case against the IH

---

[1] Independent Health Corporation ("IHC") is a for-profit, wholly owned subsidiary of Independent Health Association.

[2] Independent Health Association ("IHA") is a nonprofit company that operates a MA plan in Western New York.

[3] DxID was a New York limited liability company that is no longer operational. It formerly provided chart review services as an external coding risk consultant to Medicare Advantage ("MA") plans.

[4] Ms. Gaffney founded DxID and served as its CEO.

[5] GHC is a Seattle-based insurance company that operated MA plans in Washington and Idaho. GHC has since been acquired by Kaiser Permanente.

Defendants.  Dkt. No. 105.    In response to the IH Defendants' opposition, both the Government (Dkt. No. 114), and the Relator filed replies (Dkt No. 118).

On November 16, 2020, while the intervention motions were pending, GHC finalized its settlement agreement with the DOJ and the Relator (Dkt. No. 125-1). One week later, GHC was dismissed from the case by stipulated order.  Dkt. No. 125.  At that point, the Relator's counsel claims to have already amassed 5,149.35 hours and $3,405,847.25 in fees. *See* Declaration of Vincent E. Doyle, III, Esq. (hereinafter "Doyle Dec."), **Exhibit M**.

On August 9, 2021, this Court permitted the DOJ to intervene in Ms. Ross's lawsuit, mooting the IH Defendants' motion to dismiss the Relator's complaint. Dkt. No. 138.  One month later, on September 13, 2021, the DOJ filed its complaint-in-intervention ("CII") against the IH Defendants.  Dkt. No. 142.  The IH Defendants thereafter moved to dismiss the CII (Dkt. No. 154), the Government opposed (Dkt. No. 156), and the IH Defendants replied. Dkt. No. 157.  Supplemental briefing concluded on November 30, 2022.  Dkt. Nos. 158-160.

On January 23, 2023, the Court granted the IH Defendants' motion to dismiss in part and granted the Government leave to amend its complaint.  Dkt. No. 161.  Thereafter, the IH Defendants and the Government began settlement discussions.

On December 20, 2024, the Government and IH defendants executed a settlement agreement, with no admissions of liability.  Dkt. No. 189-1 at ¶ J. Importantly, the settlement was negotiated under the DOJ's "Inability to Pay" policy, which allows the Government to settle a monetary claim for less than the

"appropriate amount" sought when an entity conclusively proves that its current financial condition leaves it unable to pay more. *See* 28 C.F.R. § 0.160 (a)(2). When an entity seeks to avail itself of the "Inability to Pay" policy, it bears the burden of demonstrating that a higher payment amount would deprive the entity of assets necessary to carry on business and must submit comprehensive financial information to the DOJ for analysis. *Id.* After months of consideration, including analysis by the DOJ's financial experts, the DOJ accepted that the IH Defendants met the requirements of the "Inability to Pay" policy due to IH's financial condition. *See* Dkt. No. 189-1 at ¶16. Based on this "Inability to Pay" the parties reached an agreement which, in sum, requires IH to pay a guaranteed $34.5 million, with additional payments (up to a maximum of $100 million total) required only if IH's financial performance in the five years after settlement improves sufficiently to allow it to make the payments. *See id.* at ¶2(b). In other words, the DOJ determined that IH has the ability and capacity to pay only $35.5 million.

In June 2021, the Relator and GHC settled the Relator's claims for fees and costs. Dkt. No. 135. According to the settlement agreement between them, the Relator contended that GHC was solely or jointly liable for $2,841,625.98 in attorney fees, costs, and expenses.[6] *See* Dkt. No. 191-2 (Declaration of Stephen Hasegawa in Support of Relator's Motion), Exhibit E, at Recitals ¶ E. Ultimately, the Relator accepted the reduced amount of $925,000 in total fees and costs from GHC. *Id.* at Terms and Conditions ¶ 1. The agreement provides that $504,798.27

---

[6] According to the Relator's fee application in this matter, at this stage of the proceeding, counsel had incurred at $3,405,847.25 in fees. *See* Doyle Dec. **Exhibit M**.

of the $925,000 fee award is dedicated to fees for which GHC and the IH defendants were jointly and severally liable. *Id.* at ¶ 2. In settling for this amount, the Relator accepted a downward adjustment of 63% from her original request.

The Relator now asserts that she is owed $3,999,517.25 in fees, minus a $504,798.27 "set-off" from the GHC settlement, plus "additional fees and expenses incurred in litigating this motion." Dkt No. 191-1 (Memorandum of Relator Teresa Ross in Support of Motion), at p. 9; Doyle Dec., **Exhibit A**.

## SUMMARY OF ARGUMENT

The Relator has not met her burden of establishing the reasonableness of the hourly rates requested or the reasonableness of the hours expended by counsel. As such, the hourly rates and the number of hours expended should be reduced.

The hourly rates requested by the Relator's counsel are unreasonable and must be reduced for three reasons. First, the Relator did not proffer specific evidence establishing that in-district counsel would have produced substantially inferior results, and thus did not rebut the forum rule presumption. Second, the rates requested by counsel exceed those commonly charged in complex litigation in the Western District of New York, as suggested by the Declaration of Charles C. Ritter, Jr. Esq. (hereinafter "Ritter Dec."), a local practitioner in the District, as well as those commonly charged in the District of Columbia—and therefore should be reduced accordingly. Third, no matter which forum's rates are applied, the Court should utilize both historical and current rates, and not merely current rates because of the protracted length of this litigation.

Next, the number of hours claimed to be incurred by counsel must be reduced for three reasons.  First, counsels' time entries are vague, block-billed, excessive, and redundant, necessitating an overall percentage reduction of hours.  Second, counsels' top-heavy billing practices necessitate a further reduction.  Third, under well-settled legal principles, all travel time billed on the matter should be reduced by one half the amount of time.

Adjusting counsels' rates to those found in complex litigation in the Western District of New York would result in a reduction of Relator's attorneys' fees to $603,333.73.  Applying a reduction reflecting a 50% adjustment of travel time, as well as a 25% percentage reduction for improper billing and a 5% reduction for top-heavy billing practices, would further reduce the fee award to $418,286.47.  Lastly, a 2% adjustment should be applied to account for Constine Cannon's GHC-write-off, resulting in a final fee figure of **$409,920.74.**

Finally, this Court should consider the IH Defendants' ability to pay in determining a reasonable fee, for the reasons set forth in the Declaration of Jared Gross (hereinafter "Gross Dec."), the Chief Financial Officer and Executive Vice President of IHA.[7]

For these reasons, as set forth in more detail below, this Court should award the Relator **$409,920.74** in attorney fees.

## ARGUMENT

Fee-shifting provisions, like that of the False Claims Act, were "not designed as a form of economic relief to improve the financial lot of attorneys, nor were they

---

[7] Mr. Gross's declaration is the subject of a motion seeking permission to file under seal, which is being filed along with the IH Defendants' opposition papers.

intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). To that end, courts have "broad discretion to determine whether the hours expended and the rates charged are reasonable." *Hopple v. Cap. Link Mgmt., LLC.*, No. 21-CV-805S, 2023 WL 8824959, at *1 (W.D.N.Y. Dec. 21, 2023), at *1.

Indeed, to determine reasonable attorneys' fees pursuant to 31 U.S.C. § 3730(d), "a court must calculate a 'lodestar figure,' which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *United States ex rel. Tommasino v. Guida*, No. 10-CV-4644, 2017 WL 878587, at *1 (E.D.N.Y. Mar. 6, 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). To determine reasonable hourly rates, courts within the Second Circuit analyze the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Courts also must determine whether the use of current or historical rates is appropriate. *See Grant v. Martinez*, 973 F.2d 96, 100 (2d. Cir. 1992). To determine the reasonable number of hours that a case requires, a court "should exclude from its initial fee calculation hours that were not reasonably expended" *Hopple*, 2023 WL 8824959, at *1 (quoting *Savino v. Comput. Credit,* 71 F.Supp.2d 173, 175 (E.D.N.Y. 1999). Courts then multiply the adjusted hourly rates and the adjusted number of hours, to determine the lodestar figure.

After arriving at a lodestar figure, the Court may reduce the final amount if it does not "take into account a factor that may properly be considered in determining a reasonable fee," such as a party's ability to pay. *Millea v. Metro-N.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 544 (2010)).  Indeed, "a district judge need not award a lodestar amount calculated on the basis of hours and time charges but may appropriately take into account various mitigating factors . . . And [the Second Circuit has] previously recognized that ability to pay is appropriately to be considered." *Johnson v. New York City Transit Auth.*, 823 F.2d 31, 32-33 (2d Cir. 1987).  In any event, the "fee applicant carries the burden of establishing the reasonableness of both," that "the hours expended and the rates charged are reasonable." *Hopple*, 2023 WL 8824959, at *1 (citing *Hensley*, 461 U.S. at 433).

Here, the Relator has not established the reasonableness of counsels' hourly rates, which range from $1,450 for partners to $540 for a first-year associate—or the reasonableness of allowing all time going back thirteen years to be compensated at 2025 rates.  The Relator also has not met her burden of establishing the reasonableness of the number of hours expended on the case, which are supported by vague, duplicitous, excessive, and generally problematic time records.  For these reasons, and those stated below, this Court should reduce the amount requested in Relator's fee application to reflect a reasonable amount.  *See Ortiz v. Stambach*, 657 F.Supp. 3d 243, 263 (W.D.N.Y. 2023); *Brown v. Mustang Sally's Spirits and Grill, Inc.*, No. 12-CV-429S, 2013 WL 5295655, at *4 (W.D.N.Y. Sept. 18, 2013).

## I.    The Relator Has Not Met Her Burden of Demonstrating the Reasonableness of the Attorneys' Requested Hourly Rates.

The current rates for complex litigation attorneys in the Western District of New York range from $100 to $600, a stark difference from Relator's requested hourly rates of $210 to $1,450. *Compare* Dkt. No. 191-3 at Table 1, *with* Ritter Dec. at ¶¶36-42. And a review of the rates charged in the District of Columbia, the reference market the Relator urges this Court to consider, reveals that the Relator's counsels' requested hourly rates are unreasonable in comparison to that market as well. *See* Doyle Dec., **Exhibit F** (Fitzpatrick Matrix).[8]

Adding to the unreasonableness of the requested hourly rates, counsel asserts that 2025 hourly rates should be applied to all fees incurred, even though the vast majority of counsels' work occurred between 2012 and 2019. *See* Doyle Dec., **Exhibit A**. The use of current market rates may be appropriate in some litigations; but for a litigation which spans thirteen years – they are not.

In all, the Relator has not established that the use of out-of-district counsel was appropriate; has not established that the requested rates are reasonable, either in the Western District of New York or the District of Columbia; and requests fees at 2025 rates for work performed more than 10 years before.

The IH Defendants "should not be required to pay for a limousine when a sedan could have done the job." *Simmons v. New York City Transit Auth.*, 575 F.3d

---

[8] As explained further, *infra*, the Fitzpatrick Matrix is a widely accepted "dataset of attorneys' fees awarded in complex federal litigation in the United States District Court for the District of Colombia [sic]." *Nat'l Labor Relations Board v. Schmidt*, No. 23-MC-51, 2024 WL 967225, at *3 (S.D.N.Y. Mar. 5, 2024); *see HVT, Inc. v. Port Auth. Of New York and New Jersey*, No. 15-Civ-5867, 2018 WL 6079932, at *3 (E.D.N.Y. Nov. 21, 2018).

170, 177 (2d Cir. 2009). Because of this, the Court should reduce Relator's counsels' hourly rates. *See Rubin v. HSBC Bank USA, NA*, __ F.Supp.3d __, 2025 WL 248253, at *7 (E.D.N.Y. Jan. 21, 2025) (reducing partner rate from $1,185 to $650, senior associate rate from $445 to $350, junior associate rate from $445 to $275, and paralegal rate from $325 to $125); *United States v. Carranza*, __F.Supp.3d__, 2024 WL 4314713, at *8 (S.D.N.Y. Sept. 27, 2024) (reducing $116,140.63 fee request to $24,000); *Brown*, 2013 WL 5295655, at *4 ("a reasonable, paying client would not pay the hourly rates as set out by Plaintiffs, and instead a rate more consistent with this district's average is appropriate"); *see also United States ex rel. Wood v. Avalign Tech., Inc.*, No. 14-CIV-4958, 2020 WL 255115, at *9 (S.D.N.Y. May 20, 2020) (reducing rates in FCA case).

A.    Under the Forum Rule, the Relator's Attorneys Are Entitled to Only Prevailing Hourly Rates in the Western District of New York.

In determining reasonable hourly rates, the well-established "forum rule" provides that district courts should generally use the "prevailing hourly rates in the district where it sits." *Hallmark v. Cohen & Slamowitz, LLP*, 378 F.Supp. 3d 222, 227 (W.D.N.Y. 2019) (citing *Simmons*, 575 F.3d at 175-176). There is a "presumption in favor of application of the forum rule," requiring a party seeking out-of-district rates to "make a *particularized showing* . . . that use of in-district counsel would produce a *substantially inferior* result." *Peacock v. City of Rochester*, No. 6:13-CV-6046, 2016 WL 4150445, at *6 (W.D.N.Y. Aug. 5, 2016) (quoting *Simmons*, 573 F.3d at 175-176).

The Relator's Fee Application discusses the previous successes of her attorneys, the breadth of their experience, and the necessity for national counsel in

False Claims Act litigations. *See, e.g.*, Dkt. No. 191-1 at 11-17; Dkt. No. 191-4 (Declaration of Jeremy Friedman In Support of Relator's Motion), at ¶¶32-34. Those assertions do not "mean that the relator should recover fees at whatever hourly rate [her] national counsel may choose to charge," especially when the Relator has not "shown that local counsel were unwilling to take the case." *United States ex rel. Emery v. Belcon Ents. Inc.*, No. 2:14-CV-00483-DBH, 2016 WL 7494855, at *8 (D. Me. Dec. 30, 2016).

Counsel writes that "it was <u>reasonable</u> for Relator to hire out-of-district counsel," and that "it would be <u>unreasonable</u> to expect Relator to have chosen counsel from this District," to justify out-of-district rates. Dkt. No. 191-1 at 15-16 (emphasis added). A party seeking out-of-district rates, however, must make a showing of a "likelihood that the use of in-district counsel would produce a *substantially inferior* result." *Peacock*, 2016 WL 4150445, at *6. The Relator fails to allege, must less prove, that use of counsel from the Western District of New York would have produced a substantially inferior result.

As noted in Mr. Ritter's Declaration, local attorneys were more than capable of handling this case, and, in fact, local attorneys have handled similar cases successfully. *See* Ritter Dec. at ¶26. In other words, there are attorneys with "the legal skills of a seasoned litigator" that "can prosecute a *qui tam* action to its conclusion" in the Western District of New York. *Cf.* Dkt. No. 191-4 at ¶ 16.

In addition, while the Relator contends that when she chose counsel, "*every* successful *qui tam* FCA recovery in this District appears to have resulted from cases filed by P&C," 191-1 at 14, in *United States ex rel. Ellis v. Sheikh*, 583 F.Supp. 2d

11

434, 438 (W.D.N.Y. 2008), a Rochester, New York law firm Oppenheimer & Greenfield, LLP, represented a relator in a similar *qui tam* action involving allegations of Medicare fraud. Moreover, Rochester law firm Regan & McLaud, P.C. has been involved in an FCA-case since 2020. *See United States ex rel. Schwartz v. Document Reprocessors of N.Y., Inc.*, 692 F.Supp.3d 71, 75 (W.D.N.Y. 2023). Relator there also survived a motion to dismiss, underwent settlement discussions, and is apparently still resolving the matter. *See* Order, *United States ex rel. Schwartz*, No. 6:20-CV-06167 (W.D.N.Y. Dec. 26, 2024), ECF Dkt. No. 68 (most-recent scheduling order). These cases show that False Claims Act matters, even those involving allegations of Medicare fraud, can be successfully handled by local counsel at local rates.

A review of relevant cases also belies Relator's assertion that fees must be awarded at "rates reflecting national counsel's specialized skills and experience, particularly in large, complicated cases." Dkt. No. 191-1 at 18.

In *United States ex rel. Emery*, Phillips & Cohen and Constantine Cannon attempted to rebut the forum rule by employing arguments similar, and in some respects identical, to those raised here. *See* 2016 WL 7494855, at *8. For example, counsel asserted that it "was necessary for [the] complex litigation" to hire out-of-state firms and that "no law firm in Maine ha[d] a successful track record representing FCA whistleblowers." *Id.* The District Court of Maine rejected this argument finding no proof that national counsel had "particular expertise that [was] not readily available in the local market." *Id.* at *9. The court also found counsel's claim that "their respective firms' rates [were] consistent with those of

other 'national' FCA firms" was "not support[ed]."  *Id.*  The court reduced Attorney McCormack's hourly rate to $550 per hour, Attorney Inman's rate to $500 per hour, and Attorney Knobler's rate to $300 per hour.  Compare *id.* with Doyle Dec., **Exhibit A**.

Similarly, in *United States v. Community Health Sys., Inc.*, No. Civ.A. H-09-1565, 2015 WL 3386153, at *19 (S.D. Tex. May 4, 2015), an FCA-specialist sought an award of fees at $800 per hour, citing "national *qui tam* cases in which courts [had] recently approved hourly rates for experienced attorneys ranging from $375 to $600."  The Southern District of Texas rejected this argument and set rates based on "cases cited by defendants and on the court's own knowledge of market rates in the [forum district]." *Id.*

Indeed, even in an FCA case involving Medicaid fraud, a New York District Court determined that, while "such practice requires knowledge of procedural rules which do not apply in other types of litigation" the case was "not so unusual or complex as to warrant applying what amounts to higher out-of-district rates." *United States ex rel. Doe v. Acupath Laboratories, Inc.*, No. CV 10-4819, 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 19, 2015); *see also Reply All Corp. v. Gimlet Media, Inc.*, No. 15-CV-4950, 2024 WL 3855990, at *3 (E.D.N.Y. Mar. 25, 2024) ("Despite the drawn-out nature of the proceedings, I find that this lawsuit was not so complex that it required the special expertise of a nationally renowned law firm.").

Lastly, the Relator's counsel advocates for the use of out-of-district rates because the Independent Health Defendants retained out-of-district counsel. *See* 191-1 at 15.  While true that the IH Defendants retained Lathan & Watkins on

April 15, 2019, at that point, seven years of litigation had passed. During those seven years, the IH Defendants were represented by local counsel charging local rates. On the other hand, during those seven years, the Relator's counsel claims to have incurred 4,934.60 hours of work and over \$3.2 million in attorney fees, based on their national rates. *See* Doyle Declaration at **Exhibit G**. In other words, Relator's counsel incurred 85% of their hours and 81% of their fees by the time IH's local counsel retained Latham and Watkins. The fact that the IH Defendants brought in national counsel at the 11th hour does not warrant Relator's counsel being awarded 2025 "national market" rates for all the time spent from 2012 to the present.

In sum, Relator has not established that the use of out-of-district rates is necessary, and while the Relator should not be faulted for wanting to retain counsel with the best reputation, it is not the IH Defendants' "responsibility to compensate for such counsel based on higher out-of-district rates" where the Relator has not "shown that they were likely to produce a substantially better result than competent counsel in the [Western District] would produce for less—in this case, substantially less—money." *Simmons*, 575 F.3d at 177.

In any event, even if "the Court is willing to award [Relator's] counsel at an out-of-district rate, there remains the question of whether counsel's proposed hourly rates are reasonable." *Parks v. Saltsman*, No. 20-CV-6384-FPG, 2024 WL 440994, at *3 (W.D.N.Y. Oct. 8, 2024). The answer is clear: they are not. *See McGaffigan v. City of Rochester*, No. 21-CV-6546-FPG, 2023 WL 415098, at *3 (W.D.N.Y. Jan. 26,

14

2023) ("a court will not ordinarily presume that a client, if unable to find counsel in the immediate vicinity, will disregard all price concerns").

    B.    <u>The Relator's Attorneys Should Not Be Paid for Past Work at Higher Rates.</u>

In addition to requesting rates outside of those found in any district, the Relator also requests that all fees be paid at "current rather than historic hourly rates." Fee Application at 18. Simply put, doing so would ignore that a majority of the work performed in this matter occurred long before 2025. Indeed, only 812.90 hours of work were incurred between July 1, 2019 and the present, while 4,990.40 hours were incurred between March 3, 2012 and June 30, 2019. *See* Doyle Dec., **Exhibit A**. Awarding fees at 2025 rates for work that was 86% completed more than six years earlier "would lead to windfall awards and is therefor [sic] inappropriate." *In re Painwebber Ltd. P'ships. Litig.*, No. Civ. 8547 (SHS), 2003 WL 21787410, at *3 (S.D.N.Y. Aug. 4, 2003); *see also Frommert v. Conkright*, 223 F.Supp.3d 140, 153 (W.D.N.Y. 2016) ("[U]se of 2011 rates is not based on a failure to recognize the time value of money, but on the Court's conclusion that those rates, even by 2016 standards, are reasonable and adequate.").

To reduce windfalls, the Second Circuit generally declines to use current rates "in the case of protracted litigation." *Jackson v. Cassellas*, 959 F.Supp. 164, 170 (W.D.N.Y. 1997). Instead, courts either use historical rates (*New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983); *Myree v. Local 41, Intern. Broth. Of Elec. Workers*, 847 F.Supp. 1059, 1064-1065 (W.D.N.Y. 1994); *see also Parker v. Time Warner Ent. Co.*, 631 F.Supp. 2d 242, 272 (E.D.N.Y. 2009)), or divide "the litigation into two periods, applying the current rate

to the most recent phase, and a historic rate to the earlier phase." *Jackson*, 959

F.Supp. at 170; *see also In re Painewebber*, 2003 WL 21787410, at *3.

The Independent Health Defendants suggest the Court employ the two-phase

method in determining reasonable hourly rates.[9]  First, historic rates from 2015

should be applied to work performed from March 3, 2012 to June 30, 2019, and

then, current rates should be applied for work performed from July 1, 2019 through

the present.[10]

> C.    The Relator's Counsels' Requested Hourly Rates Are Not Reasonable
>        for the Relevant Time Periods.

Counsels' requested rates for partners range from $850 to $1,450 per hour;

for associates, between $500 to $750 per hour; and for paralegals and support staff,

between $210 to $625 per hour. *See* Doyle Dec., **Exhibit A**.  These rates are

unreasonable both in the Western District of New York and the District of

Columbia, the venue in which the Relator requests her fees be calculated.

A court's determination of the appropriate prevailing market rate should be

"based on evidence presented or a judge's own knowledge of hourly rates charged in

the community," where the District Court sits. *Frommert*, 223 F.Supp.3d at 149.

The rates counsel charges to paying clients "is not dispositive" nor is it "necessarily

---

[9] As stated by the court in *Carey*, "the use of historic rates at least conforms to
Congress' instruction to avoid windfall awards" but there is an "added burden of
ascertaining precise year-by-year figures in every case." 711 F.2d at 1153.  Here, it
is nearly impossible to ascertain precise year-by-year figures according to historical
rates because most entries from 2012-2019 are devoid of the rate or the fees
charged. *See generally* Dkt. No. 191-2, at Exhibit C.
[10] The first phase applying historical rates includes the fees requested in the
Relator's phases one through three.  *See* Dkt. No. 191-1 at 4-6.  The second phase
applying current rates includes the fees requested in the Relator's phase four. *See
id.* at 6.

controlling . . . in determining what fee is 'reasonable." *Capax Discovery, Inc. v. AEP RSD Invs. LLC.*, 1:17-CV-00500-CCR, 2023 WL 140528, at * 6 (W.D.N.Y. Jan. 10, 2023) (citing *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.,*, 246 F.3d 142, 151 (2d Cir. 2001)).

The Relator's fee-expert, Attorney Friedman, conflates the rates typically charged by False Claims Act counsel with the rates actually determined to be reasonable by courts. Dkt. No. 191-4 at ¶¶ 21-22. Attorney Friedman advocates for an award of hourly rates "above otherwise high reasonable hourly rates," (*id.* at ¶ 21) citing the rates *requested* in *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, Civ. No. 05-279 WJ/ACT, 2012 WL 10914086 (D.N.M. Aug. 9, 2013), *United States ex rel. Doe v. Biotronik, Inc.* No. 2:09-cv-3617-KJM-EFB, 2015 WL 6447489 (E.D. Cal. Oct. 23, 2015), and *United States ex rel. Savage v. Washington Closure Hanford*, No. CV-10-5051-SMJ, 2019 WL 13169887 (E.D. Wa. Aug. 27, 2019), without acknowledging that in each case, the court "instead *reduced* the requested award." *Brown*, 2013 WL 5295655 at *3.

To be sure, in *Baker,* the court reduced all fees to be in correspondence with the Laffey Matrix[11] (2013 WL 10914086, at *22); in *Doe*, the court reduced all fees to $400 per hour (2015 WL 6447489, at *12); and in *Savage*, the court reduced the $1,170 partner rate to $600, and the $775 associate rate to $375 (2019 WL 13169887, at *5).[12]

---

[11] The predecessor to the Fitzpatrick Matrix, *see infra* at fn. 8.
[12] The Relator also contends that the contingent nature of this litigation requires an award of greater effective hourly rates. However, "the effective hourly rate in a contingent fee case . . . is not reflective of the hourly rate a paying client would agree to in a traditional attorney-client relationship" thus "the fact that counsel will

D.    Prevailing Rates in the Western District of New York in the Relevant Time Periods Are Much Lower Than the Relator's Requests.

As established in the Declaration of Charles C. Ritter, Jr. Esq., the current hourly rates for partners pursuing complex litigation in the Western District of New York range between $300 to $560 per hour; for associates with over 5 years of experience the rates range from $225 to $320; for junior associates the rates are normally $200 per hour; and for paralegals, rates range from $100 to $140 per hour. *See* Ritter Dec. at ¶¶ 36-42.

The rates for complex litigation in the Western District of New York in and around 2015, for partners, ranged between $250-$350 per hour; for experienced associates, between $150 and $200 per hour; for junior associates, between $100 and $150 per hour; and for paralegals, between $50 and $75 per hour. *See* Ritter Dec. at ¶¶ 32-35.

Thus, to calculate a reasonable fee in the Western District of New York for work performed by the Relator's counsel from March 3, 2012 through June 30, 2019, this Court should apply an average hourly rate for partners of $300 per hour, for experienced associates of $200 per hour, for junior associates of $130 per hour, and for paralegals and support staff of $75 per hour.  This results in a reduction of fees from $3,287,116.00 to $759,098.50.[13] *See* Doyle Dec. **Exhibit C**.

Next, to calculate a reasonable fee in the Western District of New York for work performed by the Relator's attorneys from July 1, 2019 through the present,

receive a contingent fee from Plaintiff" is not "a reason to depart from the prevailing hourly rates" *Ortiz*, 657 F.Supp.3d at 268.

[13] This does not account for the GHC set-off of $504,798.27, which will be applied at the conclusion of this section.

this Court should apply an average hourly rate for partners of $450 per hour, for experienced associates of $300 per hour, for junior associates of $200 per hour, and for paralegals and support staff of $120 per hour. This results in a reduction of fees from $703,206.25 to $313,033.50.[14] *See* Doyle Dec. **Exhibit D**.

In sum, when applying the prevailing hourly rates for complex litigation in the Western District of New York in 2015 to the Relator's attorneys' work performed between 2012-2019, and the rates for 2025 to the Relator's attorneys' work performed between 2019-2025, the total fee request of $3,485,523.98[15] should be reduced to $603,333.73. *See* Doyle Declaration at **Exhibit E** (spreadsheet of total hourly rate adjustments).

> E.   Even If Prevailing Rates for the District of Columbia Applied, They Are Much Lower Than Those Which the Relator Requests.

The Relator requests this Court award fees "consistent with rates in the District of Columbia, which is the local market with the highest concentration of FCA specialists" and contends that counsel's rates "are consistent" with District of Columbia rates. Fee Application at 18. That is incorrect

District Courts in New York have calculated fees for the Washington D.C. market by referring to the Fitzpatrick Matrix, which, as previously noted, is "a dataset of attorneys' fees awarded in complex federal litigation in the United States District Court for the District of Colombia [sic]." *Nat'l Labor Relations Board*, 2024 WL 967225, at *3; *see Port Auth. Of New York and New Jersey*, 2018 WL 6079932,

---

[14] This does not account for the GHC set-off of $504,798.27, which will be applied at the conclusion of this section.
[15] This amount is different than the Relator's request, of $3,494,7187.98, because the Fee Application contains miscalculations. *See* Doyle Dec. at ¶ 18.

at *3 (applying the Laffey Matrix, the predecessor to the Fitzpatrick Matrix); *see also In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-1570, 2015 WL 6666703, at *8 (S.D.N.Y. Oct. 28, 2015). To be sure, even the District of Columbia District Court applies the Fitzpatrick Matrix to False Claims Act fee disputes. *See United States ex rel. Raggio v. Seaboard Marine, Ltd.*, No. 1:10-cv-01908-BJR, 2017 WL 2591288 at *3 (D.D.C. May 4, 2017); *see also United States v. Dynamic Visions Inc.*, 307 F.R.D. 299, 303 (D.D.C. 2015). For the Court's reference, the Fitzpatrick Matrix is attached as **Exhibit F** to the Doyle Declaration.

The years in the column on the left of the Fitzpatrick Matrix refer to an attorney's years of experience practicing law. This is calculated "based on the number of years since an attorney graduated from law school." Doyle Dec., **Exhibit F** at 2. An attorney who graduated law school in the same year as the work for which compensation is sought is considered to have 0 years of experience, and for all work beginning on January 1 of the calendar year following graduation, the attorney will have 1 year of experience. *Id.*

To calculate a reasonable fee in the District of Columbia for work performed by the Relator's counsel from March 3, 2012 through June 30, 2019, this Court should apply the 2015 rates in the Fitzpatrick Matrix. This results in a reduction of fees from $3,287,116 to $1,631,549.10.[16] *See* Doyle Dec., **Exhibit C**.

To calculate a reasonable fee in the District of Columbia for work performed by the Relator's counsel from July 1, 2019 to the present, this Court should apply

---

[16] This does not account for the GHC set-off of $504,798.27, which will be applied at the conclusion of this section.

the 2024 rates in the Fitzpatrick Matrix.  This results in a reduction of fees from $703,206.25 to $549,740.25.[17] *See* Doyle Dec., **Exhibit D**.

Thus, even if this Court were to apply the prevailing hourly rates for complex litigation in the District of Columbia—it should not—doing so would result in a reduction in the total fee request of $3,485,523.98 to $1,676,491.08. *See* Doyle Dec., **Exhibit E**.

In sum, this Court should reduce the Relator's hourly rates to reflect those commonly charged in the Western District of New York for complex litigation because the Relator has not established that hiring in-district counsel would have produced substantially inferior results.  In the alternative, if the Court finds this litigation required the use of out-of-district counsel, the Court should reduce the Relator's hourly rates to reflect those commonly charged in the District of Columbia in complex litigation.  No matter which forum rates are appropriate, the Relator's requested rates are unreasonable.  Moreover, because this litigation has spanned thirteen years, the Court can and should award the Relator fees at both historical and current rates.

## II. The Relator Has Not Met Her Burden of Demonstrating the Reasonableness of the Number of Hours Expended on This Matter.

"Hours that are not properly billed to one's client also are not properly billed to one's adversary." *Hensley*, 461 U.S. at 424.  The Relator's fee application disregards this principle by requesting payment for 5,803.25 hours of work for a case that never progressed past the pleading stage.  As this Court will appreciate,

---

[17] This does not account for the GHC set-off of $504,798.27, which will be applied at the conclusion of this section.

"within large-scale litigation . . . there are inherent inefficiencies and redundancies that occur with respect to the time expended on a case employing numerous attorneys, which are outside the scope of compensable attorneys' fees," and typically requires a reduction in the number of hours reimbursed. *In re Eastman Kodak Erisa Litig.*, 213 F.Supp. 3d 503, 507 (W.D.N.Y. 2016) (quoting *Severstal Wheeling, Inc.*, No. 10 Civ. 954, 2016 WL 1611501, at *4 (S.D.N.Y. Apr. 21, 2016)).

A reduction of hours requested can be accomplished either by: (1) imposing an "across-the-board percentage cut of the total amount of time claimed"; (2) by eliminating specific hours, or (3) by employing a combination of both methods. *Frommet*, 223 F.Supp.3d at 149. Here, because a "precise hour-for-hour reduction would be unwieldy or potentially inaccurate," the IH Defendants request the court "deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from [Relator's] application." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. Of Pomona*, 188 F.Supp. 3d 333, 344 (S.D.N.Y. 2016); *see also United States ex rel. Nichols v. Comput. Scis. Corp.*, 499 F.Supp. 3d 32, 41 (S.D.N.Y. 2020) ("the length of the litigation makes it impracticable to perfectly separate out the hours").

A close review of the hours attached to the Relator's fee application reveals a pattern of: (1) vague billing; (2) block-billing; (3) excessive billing; (4) inconsistent billing; and (5) top-heavy billing. For these reasons alone, as set forth in more detail below, the Relator's fee award should be reduced by at least 30%. *See Carranza*, 2024 WL 4314713, at *7; *Simmons v. Ferrigno*, No. 17-cv-6176(FPG), 2024 WL 5223584, at *2 (W.D.N.Y. Dec. 26, 2024) (applying 30% reduction to hours

billed); *Safranek v. Wormuth*, No. 23 Civ. 5985, 2024 WL 5186599, at *6-7 (S.D.N.Y. Dec. 19, 2024) (applying 45% reduction to hours billed); *see also Guardians Ass'n of Police Dep't of New York v. City of New York*, 133 F. App'x 785, 786 (2d Cir. 2005) (affirming 80% reduction to address excessive hours and vague time records).

    A.    <u>The Relator's Counsel Should Not Receive an Award for Entries That Are Vague, Excessive, or Redundant.</u>

To address time entries that are "excessive, redundant, or otherwise unnecessary, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Francois v. Mazer*, 523 Fed.Appx. 28, 29 (2d. Cir. 2013) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d. Cir. 1998). For the reasons listed below, a reduction of 25% in the number of hours requested is appropriate.

        *1.    The Relator's Counsels' Time Entries Are Vague.*

Courts "may deny compensation where the billing information submitted is too vague to sufficiently document the hours claimed." *Ortiz*, 657 F.Supp.3d at 265 (quotation omitted). Entries describing "calls with team and team meeting, call with client and review of additional documentation" are "exactly the type of descriptions that courts have found to be impermissibly vague in the context of recovering attorneys' fees." *Broker Genius Inc. v. Seat Scouts LLC*, No. 17-CV-8627 (SHS), 2019 WL 3773856, at *3 (S.D.N.Y. Aug. 12, 2019); *see, e.g. United States ex rel. Yasti v. Nagan Constru.*, No. 17-Civ-7163, 2021 WL 1063437, at *7 (S.D.N.Y. Mar. 18, 2021) (entries "such as 'team emails' or 'emails to client and attorneys' are too vague for the Court. . . [t]hese vague time entries will therefore be discounted.").

Many of counsel's entries "fail to provide any information about the nature of and topics discussed in the calls and letters listed in the entries" and are "sufficient to support a reduction in the hours billed." *Spalluto v. Trump Intern. Hotel & Tower*, No. 04 Civ. 7497, 2008 WL 4525372, at *8 (S.D.N.Y. Oct. 2, 2008); *see also United States ex rel. Emery*, 2016 WL 7494855, at * 10 ("the relator's uninformative entries describing these calls would allow this court to disallow all of the teleconference entries"); *Congregation Rabbinical Coll. Of Tartikov, Inc.*, 188 F.Supp. 3d at 344 (reducing Phillips & Cohen and Constantine Cannon time to address vague time entries).

The following is a small representation of the vague entries contained in Attorney Hasegawa's Exhibit C (Dkt No. 191-2):

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 4/13/2012 | Jonas | Disclosure Statement | 4.8 |
| 3/13/2012 | McCormack | Teleconference with Relator | .9 |
| 3/24/2012 | Jonas | Met with client | 7.8 |
| 5/1/2012 | Jonas | Client dinner discussing ongoing case developments – including doctor attestations; office conversations | 6.3 |
| 5/21/2012 | Jonas | Supplemental Disclosure | 5.1 |
| 5/28/2012 | Jonas | Preparing for Relator Interview | **13.7** |
| 5/16/2012 | Arens | TC with client re: case | 1.1 |
| 5/24/2012 | Arens | TC with MAI, MEJ, and TPM re: case | 1.9 |
| 8/30/2012 | Jonas | Call with client, email with team | .6 |
| 1/18/2013 | Arens | TC with MAI, TPM, and MEJ re: case | .6 |
| 9/29/14 | Stabile | Phonecall w/ client and mary | .7 |

Similar representative entries are contained in Attorney Voldman's Exhibits A and B (Dkt No. 191-3):

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 2/11/2016 | Voldman | 2010 and 2011 Damages Coding | 6.75 |
| 12/8/2016 | McCormack | Teleconference with Government re: case | .75 |

| | | status | |
|---|---|---|---|
| 3/24/2012 | Jonas | Met with client | 7.8 |
| 7/8/2019 | Griffin | Confer with M. Ronickher re: case status | 1 |
| 7/30/2019 | Ronickher | Email to client re: status | .5 |
| 9/6/2019 | Ronickher | Email to D. Wiseman re: status | .5 |
| 9/30/2019 | Voldman | Emails with client re: case status | .5 |
| 6/28/2014 | Voldman | Discussion of status with client | .5 |
| 12/9/2024 | Voldman | Logistics re: settlement | .5 |

In addition, nearly 1,000 hours of counsel's time was spent in "doc review." *See* Doyle Dec. **Exhibit H**. Without an indication of how many documents were reviewed, or for what purpose, it is impossible to ascertain the reasonableness of the hours claimed to have been expended on such review. For example, Attorney Samantar, in less than a one-month span, spent 128.5 hours to "review and code hot documents." *See id.* The entries in **Exhibit H** do not contain every time entry regarding document review, but rather those that contain no details about the documents reviewed. *See Frommert*, 223 F.Supp.3d at 157-158 ("records over the past year reflect almost daily entries, often totaling over 8 or 9 hours a day . . . I do not doubt that those hours were in fact expended" but "I am not convinced that they could not, or should not reasonably have been reduced.").

### 2. *The Relator's Counsel Engaged in Disfavored Block-Billing.*

The difficulty of determining the reasonableness of counsel's time is compounded counsels' use of judicially-disfavored "block-billing" –a single time entry containing descriptions of multiple, different tasks. Block billing is "most problematic where large amounts of time (e.g., five hours or more) are block billed" because it "meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent." *Beastie Boys v. Monster Energy Co.*, 112

F.Supp. 3d 31, 53 (S.D.N.Y. 2015); *see United States ex rel. Tommasino*, 2017 WL 878587, at *8 (determining block-billed entries "that mention communications between the attorneys or others without specifying the reason for the communication or vaguely describing it as involving 'status'" warranted reduction).

A representative example of block-billed entries that cover more than five hours in Attorney Hasegawa's Exhibit C includes:

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 3/23/2012 | Jonas | Read email from Molly about attachment research, drafted email to MAI; began drafting complaint | 8.2 |
| 3/26/2012 | Jonas | Drafting complaint; reviewing medical records | 8.7 |
| 5/24/2012 | Jonas | Call with client, strategy meeting with team, work on powerpoint, review of medical records | 7.0 |
| 5/29/2012 | McCormack | Prepare for and participate in meeting with Government; follow up research to prepare for Tomorrow's meeting. | **13.4** |
| 7/6/2012 | Jonas | Compiling documents for government interviews of DxID employees; updating interview questions; working with Chris to obtain photos of each DxID employee; emailing MAI memo with information | 7.5 |
| 1/7/2013 | Jonas | Circulating PowerPoint presentation, working on PowerPoint for next weeks meetings; forwarding and explaining new documents to team members | 7.9 |
| 1/8/2013 | Jonas | Review of transcripts; incorporating highlights; review/organizing new medical records. | 6.9 |
| 1/17/2013 | Jonas | Email Kirin Hage recordings spreadsheet; watched CY 2011 Risk Adjustment Data Validation Overview; edited notes from government meeting; put together a to-do list | 7.5 |
| 1/28/2013 | Jonas | Drafting/editing current employee interview questions; call with TR, MAI to discuss taping opportunities | 8.4 |

Similar entries are contained in Attorney Voldman's Exhibits A and B:

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 3/10/2016 | McCormack | Revise Tracy document/interview outline; edit | 6.75 |

26

| | | PowerPoint outline for meeting with Government; email E. Stabile and meet with M. Knobler re: case status. | |
|---|---|---|---|
| 1/10/2019 | Samantar | Continue to review individual hot docs; create spreadsheet for hot docs; create CID documents outline. | 10.5 |
| 9/9/2021 | Ronickher | Review draft CII; confer with M. Voldman re: same | 7 |

### 3. *The Relator's Attorneys Overbilled and Recorded Inconsistent Time Entries*

The Relator's counsels' time entries are unreasonably excessive. *See Mr. X v. Education Dep't*, 20 F.Supp. 2d 561, 564 (S.D.N.Y. 1998) ("The court may refuse to grant fee requests for time entries that are excessive or redundant."). There are multiple instances in which partners claim they met with an associate, with no corresponding associate time entry, and vice versa. Lastly, some timekeepers billed twice on a single day, totaling an unreasonable amount of hours. *See Retained Realty, Inc. v. Spitzer*, 643 F.Supp.2d 228, 241 (D. Conn. 2009) (reducing hours where attorneys billed "beyond what the court considers to be reasonable"). Unreasonably excessive time entries in Attorney Hasegawa's Declaration Exhibit C include, but are not limited to:

| Date | Name | Description | Hours |
|---|---|---|---|
| 5/31/2012 | Jonas | Mailing copy of powerpoint presentation, saving documents to worlddox | 2.8 |
| 6/18/2012 | Arens | Drafted letter to government re: risk adjustment | 5.6 |
| 2/22/2013 | Jonas | Email to gov't team summarizing spreadsheet of materials describing physician groups. | 4.2 |
| 6/25/2013 | Jonas | Download of files received from Kirin Hage on TEC Stanwood; email to Mair regarding their successful download; quick review of files to ensure they were downloaded successfully | 5.0 |

Inconsistent time entries in Attorney Voldman's Exhibit B and Exhibit C

include, but are not limited to:[18]

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 11/1/2018 | Yang | Verify set of production correspondence was saved in FileSite per R. Griffin | 1 |
| 1/22/2019 | Samantar | Edit CID draft outlines | 10 |
| 7/16/2019 | Ronickher | Confer with R. Griffin re: service; email co-counsel re:same, mediation | 4 |
| 7/21/2014 7/21/2014 | Stabile | Doc review for witness binders | 8.1 and 7.5 |
| 6/7/2017 | Ronickher | Confer with R. Griffin re: case status, strategy and next steps. | 1.75 |
| 12/5/2017 | Ronickher | Confer with R. Griffin re: deposition prep strategy | 1.0 |
| 12/5/2017 | Griffin | Confer with M. Ronickher re: status and strategy | .5 |
| 4/19/2019 | Ronickher | Confer with R. Griffin re: G. Wands depo prep; develop strategy for same. | .75 |
| 6/7/2019 | Griffin | Confer with M. Ronickher re: case status | .5 |

In addition to the above-listed examples, the sheer size of the Relator's

counsel roster alone, necessarily causes "appreciable duplication of effort" and

causes "the full amount requested by [Relator to] exceed what is a reasonable fee."

*Eastman Kodak*, 213 F.Supp. 3d at 507-508.

To account for problematic and inconsistent time-keeping and billing

practices, courts routinely make across-the-board reductions in the range of 25% or

higher. *See, e.g., Payne v. Allied Interstate, Inc.*, No. 12-cv-6136, 2013 WL 5574641,

at *18-19 (W.D.N.Y. Oct. 9, 2013) (reducing attorneys' reported hours by 70% where

"much of the work" was "unnecessary, redundant, administrative, or clerical");

---

[18] For clarity, on December 5, 2017, Attorney Ronickher wrote that he conferred with Attorney Griffin, but she did not bill for the same.  The same pattern occurred on April 19, 2019 and June 7, 2019.  In addition, on December 5, 2017, Attorney Ronickher billed 1.0 for a meeting with Attorney Griffin, while she billed only .5. These are merely representations of the inconsistent billing practices of counsel.

*Safranek*, 2024 WL 5186599, at *6-7 (employing a 45% reduction). Indeed, the Second Circuit has upheld a district court's fifty (50) percent across-the-board reduction of hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 64 (2d. Cir. 2014).

Thus, given the number and scope of the issues involving the Relator's counsels' billing practices – including, (1) vague time entries, (2) use of block billing, (3) top-heavy billing (4) and excessive time spent– an additional 25% reduction in Claimant's remaining hours is appropriate.

B.    The Relator's Counsels' Time Entries Reflect Top-Heavy Billing.

The hours claimed by the Relator's counsel reflect a "less-than-efficient distribution of labor" considering that the "overwhelming majority of the work performed" was performed by attorneys, as shown in Doyle Dec., **Exhibit I**. *See Eastman Kodak*, 213 F.Supp. 3d at 507-508. Indeed, nearly 30% of the hours incurred by counsel were incurred by partners and less than 10% of work was completed by support staff and paralegals. Put another way, 96% of the fees incurred in this matter were incurred by attorneys. This "troublingly top-heavy distribution of labor" is not "entirely reasonable given the fairly routine matters (such as discovery) that were the focus of most of the case" *Id.* As such, a further reduction of 5% is necessary.

C.    The Relator's Counsels' Time Entries Contain Travel Time Which is Improperly Billed.

Moreover, "hours spent travelling by out-of-district attorneys are not hours 'reasonably expended' where competent counsel is available within the district."

*United States ex rel. Wood*, 2020 WL 2555115, at *7 (quoting *Imbeault v. Rick's Cabaret Int'l, Inc.*, No. 08-Civ-5458, 2009 WL 2482134, at *8 (S.D.N.Y. Aug. 13, 2009)).  Because of this, courts "generally discount travel time by one half." *United States ex rel. Yasti*, 2021 WL 1063437, at *7; *see also Capax*, 2023 WL 140528, at *8.

The Relator's counsel billed 164.25 hours in travel time.  Applying a 50% reduction to this travel time, according to the Western District of New York rates, results in a $16,265.00 reduction.  *See* Doyle Dec., **Exhibit J**.

D.    The Relator's Counsels' Time Entries Warrant a Reduction In The Number of Hours Billed.

Simply put, "a dramatic reduction in the number of hours billed . . . is required." *Carranza*, 2025 WL 4314713, at * 7.  The Relator's reasonable fees, as adjusted by applying the rates found in the Western District of New York, are reduced to $603,333.73.  Additional downward adjustments based on the time entries are warranted.  First, the Court should reduce this award by applying the $16,265 reduction reflecting the principle that travel time be billed at 50%, resulting in a total of $587,068.73.  Second, the Court should apply a 25% reduction to account for counsels' improper billing practices, resulting in a total of $440,301.55.  Third, the Court should apply a 5% reduction to account for counsels' top-heavy billing practices, resulting in a total of $418,286.47.  *See* Doyle Dec. **Exhibit K.**[19]  Finally, the Court should apply a 2% reduction to account for

---

[19] **Exhibit K** also shows hourly fee adjustments according to the prevailing rates in the District of Columbia, which results in an adjusted fee award of $1,169.961.30.

Constantine Cannon's GHC-write-off, resulting in total fees of **$409,920.74**. *See* Doyle Dec. ¶16, **Exhibit L**.

### III. The IH Defendants' Complex Financial Situation Merits a Downward Adjustment.

Regardless of the reasonableness of the Relator's counsels' proposed hourly rates and reasonableness of the hours expended, the IH Defendants request a reduction of the fee award in light of their complex financial situation.

"Even after the presumptively reasonable fee is established, the final fee award may be adjusted downward based on the relative financial strength of the parties." *Gesuladi v. Laws Const. Corp.*, 759 F.Supp. 2d 432, 447 (S.D.N.Y. 2010) (quoting *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992)). Indeed, "fee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account." *Id.*; *see also Johnson*, 823 F.2d at 33 ("ability to pay is appropriately to be considered").

Here, IHA has presented "evidence of its own financial condition to justify a reduction on that ground" through Mr. Gross's Declaration. *Gesuladi*, 759 F.Supp.2d at 447. Unlike the "bald assertions of economic disparities" found in *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12-CV-275, 2015 WL 1726474, at *3-4 (S.D.N.Y. Apr. 15, 2015), Mr. Gross describes, in detail, IH's financial situation, including the effect that an award of the full amount requested by counsel would have. The financial situation of IH is further confirmed by the fact that the DOJ negotiated a settlement with the IH Defendants under the rarely used "Inability to Pay" policy. *See* 28 C.F.R. §0.160(a)(2); Dkt. No. 189-1. This policy allows the Government to settle a monetary claim for less than the amount

sought when "a qualified financial expert has determined that the offer in compromise is likely the maximum that the offeror has the ability to pay." *See* 28 C.F.R. §0.160(a)(2).  In doing so, the DOJ accepted a settlement of $34.5 million for a claim it calculated was worth more than $600 million. *See* Dkt. No. 189-1 at ¶ 2(B) and ¶26(E)(2).

Thus, for the reasons set forth above, and in the Declaration of Jared Gross, this Court should consider an additional downward adjustment of the Relator's fee award.  *See Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1028 (2d. Cir. 1979) (remanding fee application award to district court for "a more focused inquiry into the equities of the situation").

## <u>CONCLUSION</u>

The Relator's request for fees is unreasonable for multiple reasons.  The Relator failed to establish that the use of out-of-district rates is proper, failed to apply historical rates to a 13-year litigation, and failed to conform rates to those commonly charged in either the Western District of New York or the District of Columbia.  Applying Western District of New York rates results in an adjusted fee of **$603,333.73**.  The Relator's claimed hours expended on this litigation are also unreasonable, considering the amount of vague, excessive, and redundant time entries and top-heavy billing practices.  Adjusting for these practices, with a 30% reduction, results in an adjusted fee of **$418,4286.47**.  The fee should also be reduced to reflect Constantine Cannon's GHC-write-off, resulting in an adjusted fee of **$409,920.74**.  And, finally, this Court's determination of a reasonable fee award should consider the IH Defendants' financial situation. For these reasons, and those

set forth above and in the accompanying declarations, the IH Defendants

respectfully request that the Relator's Fee Application be reduced to an award of

**$409,920.74**, or such other amount the Court deems reasonable.

DATED:    Buffalo, New York
              March 13, 2025

                                   /s/ Vincent E. Doyle, III
                                   Vincent E. Doyle, III, Esq.
                                   Bryan P. Kroetsch, Esq.
                                   Samantha B. Gier, Esq.
                                   **CONNORS LLP**
                                   *Attorneys for IH Defendants*
                                   1000 Liberty Building
                                   424 Main Street
                                   Buffalo, New York 14202
                                   (716) 852-5533

TO:   All Parties of Record