UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, ex rel.
Teresa Ross,

Plaintiffs,

12-cv-0299-MAV

-vs-

DECISION & ORDER

INDEPENDENT HEALTH CORPORATION,
INDEPENDENT HEALTH ASSOCIATION, INC.,
DxID LLC, AND BETSY GAFFNEY,

Defendants.

## INTRODUCTION

Relator Teresa Ross filed a motion for attorneys' fees requesting an award of $3,494,718.98 pursuant to 31 U.S.C. § 3730(d)(1). ECF No. 191. Defendants Independent Health Corporation, Independent Health Association, Inc., and DxID LLC (collectively "IH Defendants") opposed the motion and argued that Relator is entitled to $409,920.74 in attorneys' fees. ECF No. 201. Relator filed a reply, in which she requested an additional $95,439.75 in attorneys' fees associated with preparing the fees motion. ECF No. 209.

For the reasons that follow, Relator's motion for attorneys' fees (ECF No. 191) is granted in part, and Relator is awarded attorneys' fees in the amount of $2,084,576.15.

## BACKGROUND

Relator worked as the Director of Insurance and Health Data Analysis for former Defendant Group Health Cooperative (GHC), a non-profit health care

organization in Seattle that insures Medicare patients through the Medicare Advantage program. ECF No. 1 at 8. Defendant Independent Health Corporation (IHC) is a private insurer based in Buffalo that also insures Medicare patients through the Medicare Advantage program. ECF No. 1 at 9. Through the Medicare Advantage program, the Centers for Medicare & Medicaid Services pay companies like GHC and IHC to insure Medicare patients, giving them a "capitation rate" per patient, which is adjusted to account for the patient's demographics, location, and health status. ECF No. 1 at 3–4, 9.

Defendant DxID LLC is a subsidiary of IHC based in East Rochester that performed "risk-adjustment review services" under the Medicare Advantage program to ensure that they were submitting the correct health status information (called risk adjudgment data) for each patient. ECF No. 1 at 4, 9–10. Former Defendant Dr. John Haughton was DxID LLC's Consulting Risk Adjudgment Advisor and Defendant Betsy Gaffney was DxID LLC's Co-Chief Executive Officer. ECF No. 1 at 10–11.

Relator initiated this qui tam action against all Defendants in 2012 by a complaint filed by attorneys from Phillips & Cohen LLP in Washington, DC, and local counsel from Personius Belber LLP in Buffalo. ECF No. 1 at 46–47. Relator alleged that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729(a), by submitting false risk adjustment claims under the Medicare Advantage program, seeking additional payments for patients by claiming diagnoses patients did not have and treatments that were not performed. ECF No. 1 at 3, 5, 44–45.

Relator filed an amended complaint in 2016 signed by Buffalo counsel and a

new DC firm, Constantine Cannon LLP. ECF No. 32.

In 2019, attorneys from Hodgson Russ LLP in Buffalo entered their appearance for Defendants. ECF Nos. 66, 67. In 2019, attorneys from Perkins Coie LLP from Seattle, Washington entered their appearance on behalf of GHC's successor. ECF Nos. 74, 79, 80. Also in 2019, attorneys from Buffalo (Connors LLP) and DC (Latham & Watkins LLP) entered their appearances for Defendants IHC, Independent Health Association, DxID LLC, and Haughton. ECF Nos. 83, 84, 85, 100.

GHC and IHC filed motions to dismiss the amended complaint in 2019 (ECF Nos. 91, 94), to which Relator's attorneys responded in opposition (ECF No. 102, 103). The United States moved to partially intervene in January 2020 for purposes of finalizing a settlement with GHC. ECF No. 105. IH Defendants opposed the intervention (ECF No. 109), and Relator's attorneys prepared and filed a reply. ECF No. 112. The Court allowed the intervention, ECF No. 138, and the government filed a complaint in intervention in September 2021. ECF No. 142.

GHS settled and paid the United States $6,375,000. ECF No. 125-1 at 4. Relator later settled with GHS for fees and costs, $504,798.27 of which were for fees for which IH Defendants are jointly and severally liable. ECF No. 191-2 at 130-137. The remaining Defendants also settled and agreed to pay the United States up to $100,000,000, depending on their ability to pay, with Relator to receive 22.5% of whatever the United States recovers. ECF No. 189-1 at 4–5, 10.

Relator filed a motion for attorneys' fees against IH Defendants requesting $3,494,718.98 in attorneys' fees. ECF No. 191. IH Defendants opposed, agreeing that

Relator is owed attorneys' fees, but submitting that a more reasonable amount is $409,920.74. ECF No. 201. Relator replied and requested an additional $95,439.75 for attorneys' fees associated with litigating the fees motion. ECF No. 209.

Relator submitted additional case law to the Court in a separate filing (ECF No. 210), to which IH Defendants objected, claiming that Relator had impermissibly included argument in the submission (ECF No. 211). The Court did not find the cases necessary to cite in its analysis.

This case was reassigned to the undersigned on December 18, 2025. ECF No. 213. The motion for attorneys' fees is now before the Court.

## LEGAL STANDARD

Under the FCA, Relators who receive a percentage of the settlement proceeds in a qui tam action "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C.A. § 3730(d)(1). "All such expenses, fees, and costs shall be awarded against the defendant." *Id.*

As the party requesting fees, Relator "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

To determine reasonableness, the Court calculates the "lodestar"—"a 'presumptively reasonable fee' [calculated] by multiplying a reasonable hourly rate by the reasonable number of hours spent." *Perry v. Erie Cnty. Supreme Ct.*, No. 1:23-CV-00848 EAW, 2025 WL 1322655, at *1 (W.D.N.Y. May 7, 2025); *see also Arbor Hill*

*Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).

In calculating the lodestar, the Court considers:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 187 n.3.

The Court has "broad discretion to determine whether the hours expended and the rates charged are reasonable." *Hopple v. Cap. Link Mgmt., LLC*, No. 21-CV-805S, 2023 WL 8824959, at *1 (W.D.N.Y. Dec. 21, 2023).

## DISCUSSION

The parties do not dispute that Relator is owed attorneys' fees pursuant to 31 U.S.C. § 3730(d). *See* ECF No. 201 at 8. The only issue in dispute is the appropriate lodestar—the reasonable hourly rate multiplied by a reasonable number of hours.

### 1. Reasonable Hourly Rate

Relator argues that the hourly rates typically charged by her attorneys, who are based in DC, are reasonable and should be applied. ECF No. 191-1 at 15–22. IH Defendants respond that Relator could have hired local counsel, who would have charged much lower rates. ECF No. 201 at 16–22.

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,'

'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" *McLaughlin v. IDT Energy*, No. 14-CV-4107 ENV RML, 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (quoting *Arbor Hill*, 522 F.3d at 190).

Under the "forum rule," "a district court should generally use the prevailing hourly rates in the district where it sits." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 617–18 (E.D.N.Y. 2017); *see Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009) ("[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule."); *Ortiz v. Stambach*, No. 1:16-CV-00321 EAW, 2023 WL 2058075, at *13 (W.D.N.Y. Feb. 17, 2023) ("There is a presumption that a 'reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally,' and the burden is on the attorney seeking a higher rate to rebut that presumption." (quoting *Arbor Hill*, 522 F.3d at 190)).

The presumption to apply in-district rates can be rebutted by the moving party making a "particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Simmons*, 575 F.3d at 176. "'[C]ases involving highly specialized and complex areas of law' may warrant a conclusion that the presumption has been rebutted." *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 6:19-CV-06036 EAW, 2025 WL 1720286, at *3

(W.D.N.Y. June 20, 2025) (quoting *Gordon v. Chambers*, No. 20-CV-696, 2024 WL 3533876, at *16 (E.D.N.Y. July 25, 2024)).

The Court concludes that Relator has rebutted the forum rule presumption here. *See, e.g.*, *Midwest Athletics*, 2025 WL 1720286, at *4; *United States ex rel. Rai v. KS2 TX, P.C.*, No. 3:17-CV-834 JBA, 2019 WL 1397290, at *5 (D. Conn. Mar. 27, 2019), *order amended on reconsideration*, No. 3:17-CV-834 JBA, 2019 WL 3854301 (D. Conn. Aug. 16, 2019). Beginning with the initial showing that the selection of Relator's counsel "was predicated on experience-based, objective factors," *Simmons*, 575 F.3d at 176, Relator established that she lived and worked in Seattle for a Seattle company (GHC). ECF No. 191-1 at 20; *see* ECF No. 1 at 8. She initially hired Phillips & Cohen LLP, a Washington DC firm, because of their national reach and experience in qui tam cases, which Relator outlines in detail in her motion. ECF Nos. 191-1 at 20–21; 191-2 at 3–6; 191-3 at 15–17. Relator's attorneys left Phillips & Cohen LLP and joined Constantine Cannon LLP, and then later founded Whistleblower Partners LLP, which explains why three firms worked on this case for Relator. ECF Nos. 191-1 at 21; 191-2 at 18–19. Further, as Relator points out, she did not initially know that her complaint would be filed in this District, and had little reason to seek counsel based here. ECF No. 191-1 at 20. The Court finds that Relator sufficiently establishes that the selection of out-of-district counsel was reasonable.

The Court also finds that Relator has established "the likelihood that use of in-district counsel would produce a substantially inferior result." *Simmons*, 575 F.3d at

176. Relator submitted through the declaration of Jeremy Friedman[1] that "there are few if any attorneys anywhere in the country who could have matched the quality of the work, and organization of the factual record, that occurred in this case" and that Relator and the United States would not have obtained the same results without their chosen attorneys. ECF No. 191-4 at 13–14. Relator supported this contention with a detailed description of the credentials and expertise of the firms and billing attorneys. ECF Nos. 191-1 at 20–21; 191-2 at 3–12; 191-3 at 2, 15–21.

Relator's contention is also established through the results in this case—Relator and the government entered into a settlement with IH Defendants worth up to $100,000,000, of which 22.5% will be awarded to Relator. ECF No. 189-1 at 4–5, 10. The success obtained warrants a higher reasonable rate. *See Hensley*, 461 U.S. at 436 ("the most critical factor" in calculating the lodestar "is the degree of success obtained").

While there are undoubtedly talented qui tam attorneys within this District, Relator establishes that the same was not true in 2011 when she hired counsel. She contends that as of 2011, "every successful qui tam FCA recovery in this District appears to have resulted from cases filed by P&C," the DC-based firm that represents Relator. ECF Nos. 191-1 at 18; 191-2 at 5–6. IH Defendants provide examples of qui tam actions filed in this District by in-district counsel. ECF No. 201 at 18–19 (citing *United States ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 438 (W.D.N.Y. 2008)

[1] Friedman is a California-based attorney who has extensive experience litigating FCA cases, dating back to 1990. ECF No. 191-4 at 2–3. He has presented on FCA litigation and attorneys' fees, has "handl[ed] more than 100 fee disputes under various fee-shifting statutes," and has previously consulted as an expert in attorneys' fees. ECF No. 191-4 at 3–6.

(Oppenheimer & Greenfield, LLP); *United States ex rel. Schwartz v. Document Reprocessors of N.Y.*, Inc., 692 F. Supp. 3d 71, 75 (W.D.N.Y. 2023) (Regan & McLaud, P.C.)). Yet *Schwartz* was filed in 2020 (*see* 20-cv-6167), and not at the time Relator was seeking counsel, and Relator submitted evidence that the relator's counsel in *Ellis* was not successful. *See* ECF No. 209-1 at 13 (voluntary dismissal with prejudice); *see also* 05-cv-6146. Thus, Relator's contention that the only successful qui tam cases in this District in 2011 were brought by out-of-district attorneys is uncontradicted, and supports the likelihood that in-district counsel would have obtained a substantially inferior result.

Additionally, the two cases IH Defendants rely on involved allegations against a single, local organization, whereas this case involved multiple companies in a cross-country scheme. The existence of local counsel who have taken qui tam cases in the past is "insufficient to establish that local counsel was available to Relator, as none of the cases appear to be as complex, contested, or drawn out as this litigation." *United States ex rel. Savage Logistics LLC v. Washington Closure Hanford LLC*, No. 2:10-CV-05051-SMJ, 2019 WL 13169887, at *4 (E.D. Wash. Aug. 27, 2019).

The nature of this case further supports applying out-of-district rates. *See Midwest Athletics*, 2025 WL 1720286, at *4; *Rai*, 2019 WL 1397290, at *5 ("the Court is persuaded that given the breadth and complexity of this case, a reasonable, paying client would likely hire national counsel experienced in the type of investigation and litigation implicated here"). As Relator established through Friedman's declaration, qui tam litigation is highly complex and specialized, and few firms practice it in the

country. ECF No. 191-4 at 12–13. This particular qui tam case included the added specialization of Medicare coding and billing, and because of its national scope, required the knowledge and experience to decide where best to file the complaint. ECF No. 191-4 at 14, 22. The Court finds that "the matter constitute[d] an exceptional case warranting such compensation." *Midwest Athletics*, 2025 WL 1720286, at *4.

Indeed, IH Defendants similarly hired out-of-district lawyers to represent them in this case. ECF Nos. 84, 85, 100. IH Defendants argue that they had local counsel until 2019, while Relator always had out-of-district counsel. ECF No. 201 at 20–21. While correct, the Court notes that IH Defendants used counsel from DC, and not local counsel, to file their dispositive motion in 2019. *See* ECF No. 94 (motion to dismiss). IH Defendants' choice of counsel supports that this case was sufficiently complex and specialized to warrant out-of-district counsel. *See Rai*, 2019 WL 1397290, at *5 (reasoning in applying out-of-district rates that "no party, whether relator or defendant, was represented solely by counsel from within this District"); *see also United States ex rel. Zediker v. OrthoGeorgia*, 407 F. Supp. 3d 1330, 1343 (M.D. Ga. 2019) ("no local attorneys specialize in FCA litigation, although some may from time to time handle an FCA case . . . both relators and qui tam defendants frequently hire lawyers from outside the . . . District"), *aff'd* 857 F. App'x 600 (11th Cir. 2021).

In sum, the Court concludes that out-of-district rates are reasonable under the circumstances of this case. The Court next considers whether the rates Relator submitted are reasonable considering rates charged outside this district. Relator's

attorneys are based in DC.

Relator submitted a declaration from Friedman contending that the submitted rates are consistent with or at the low end of typical rates in DC. ECF No. 191-4 at 16–17, 19–20. IH Defendants respond that the submitted rates are high even for DC, relying on the "Fitzpatrick Matrix," which is a "'dataset of attorneys' fees awarded in complex federal litigation in the United States District Court for the District of Colombia [sic]'" ECF No. 201 at 26–28 (quoting *Nat'l Lab. Relations Bd. v. Schmidt*, No. 23-MC-51, 2024 WL 967225, at *3 (S.D.N.Y. Mar. 5, 2024)). IH Defendants submit a declaration from Charles Ritter, Jr., who contends that courts in the District of DC have used the Fitzpatrick Matrix. ECF No. 201-2 at 12. In reply, Relator argues that there are problems with the Fitzpatrick Matrix which cause it to underreport the rates used in DC. ECF No. 209 at 12–13. Relator instead would use the 2024 Wolters Kluwer Real Rate Report, which suggests that counsel's rates are at the low end for DC. ECF No. 209-1 at 6.

The Court is not persuaded by Relator's objections to the Fitzpatrick Matrix and concludes that the rates in the Fitzpatrick Matrix are reasonable to use in this case. *See, e.g.*, *Nat'l Lab. Relations Bd.*, 2024 WL 967225, at *3; *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 16 (D.C. Cir. 2023) (awarding fees at Fitzpatrick Matrix rates).

The parties further disagree about which years' rates to apply. Relator argues that 2025 hourly rates should apply to all fees incurred to compensate for the delay in payment. ECF No. 191-1 at 18. Relator applies 2025 rates but historic experience,

such that if a partner was an associate at the time of billing, the firm 2025 rates for associates would apply rather than the 2025 partner rates. ECF No. 191-3 at 13 n. 4. IH Defendants propose that different rates should apply to two phases—that 2015 rates should apply to work performed between 2012 and June 2019, and that 2025 rates should apply to work performed between July 2019 and present. ECF No. 201 at 16. The Court agrees with Relator that 2025 rates should apply to account for the length of delay. *See Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709–10 (2d Cir. 2009); *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) ("The rates used by the court should be 'current rather than historic hourly rates.'") (citation omitted).

The Court applies 2025 rates from the Fitzpatrick Matrix and uses historic positions as Relator suggests. While Relator seemingly only applies historic experience to associates, the Court also uses historic experience for partners based on their years of experience after graduation at the time the work was performed.[2]

IH Defendants have only provided the Fitzpatrick Matrix through 2024. *See* ECF No. 201-1 at 17. The 2025 version is readily available online, and is created by the Department of Justice. *See* United States Attorney's Office District of Columbia, "Civil Division," Fitzpatrick Matrix, 2013–2026, https://www.justice.gov/usao-dc/civil-division (last visited Sept. 28, 2026). As such, the Court takes judicial notice

[2] Relator submitted different rates for associates based on experience. *See, e.g.*, ECF No. 191-2 at 125. For partners, Relator seemingly submitted a flat rate of $1,100 for most Phillips & Cohen LLP partners, but submitted a different rate of $860 for one partner. ECF No. 191-2 at 125–126. The timesheets for each biller reflect the experience level at the time the work was performed even for partners, however. *See, e.g.*, ECF No. 191-2 at 123 (showing Hasegawa billing time as a "26 Partner" and a "27 Partner").

of the 2025 Fitzpatrick Matrix. *See* Fed. R. Evid. 201(b); *Rahman v. Schriro*, 22 F. Supp. 3d 305, 311 (S.D.N.Y. 2014) ("[T]he Court is permitted to take judicial notice of United States government publications.").

In sum, the Court concludes that the most reasonable rates to apply in this case are the rates reflected in the 2025 Fitzpatrick Matrix. The experience level applied is based on graduation year and the year the work was performed, regardless of whether the biller was an associate or a partner. The reasonable rates applied are reflected in the chart below.

**2. Reasonable Number of Hours**

Relator requests payment for a total of 5,803.75 hours incurred over the course of the 12-year litigation. ECF No. 191-1 at 5, 13. IH Defendants argue that the submitted timesheet "reveals a pattern of (1) vague billing; (2) block-billing; (3) excessive billing; (4) inconsistent billing; and (5) top-heavy billing," and request a blanket reduction of "at least" 30%. ECF No. 201 at 29. In reply, Relator defends her counsel's time entries and argues that only a small minority of entries used block billing. ECF No. 209 at 15–21.

"In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are 'excessive, redundant, or otherwise unnecessary.'" *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *Hensley*, 461 U.S. at 434). In doing so, "the district court is not obligated to undertake a line-by-line review of [the] extensive fee application. It may, instead, 'exercise its discretion and use a percentage deduction as a practical means of trimming fat.'"

*Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).

The Court agrees that some of the time entries are for longer than the associated activity seems to warrant, contain inconsistencies between billers, and occasionally employ improper block billing. *See, e.g.*, ECF No. 201 at 31–35 (IH Defendants providing examples). Additionally, the large size of the team, while not surprising for a litigation such as this, suggests redundancies and inefficiencies, especially as attorneys switched to new firms. *See Severstal Wheeling, Inc. v. WPN Corp.*, No. 10CIV954LTSGWG, 2016 WL 1611501, at *4 (S.D.N.Y. Apr. 21, 2016) ("[W]ithin large-scale litigation drawn over a period of several years, there are inherent inefficiencies and redundancies that occur with respect to the time expended on a case employing numerous attorneys, which are outside the scope of compensable attorneys' fees.").

IH Defendants argue that the time entries for travel should be reduced by 50% because competent local counsel was available. ECF No. 201 at 36–37. In reply, Relator "concede[s] the point." ECF No. 209 at 19 n 8. The Court does not reduce the travel time by 50% because of its conclusion that it was reasonable for Relator to hire out-of-district counsel.

Rather than reducing entries line-by-line, the Court concludes that a percentage reduction of 30% is appropriate here. *See, e.g., Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *Rai*, 2019 WL 1397290, at *8; *Severstal Wheeling,*

*Inc.*, 2016 WL 1611504 at *4. The reduction encompasses, among other things, any potential inefficiencies occurring in the travel billing.

**3. Fees on Fees**

In her reply, Relator requests an additional $95,439.75 in attorneys' fees for the time spent litigating the fees motion. ECF No. 209 at 23–24; *see* ECF Nos. 209-1 at 35; 209-2 at 10 (corresponding time entries). The Court finds that Relator is entitled to attorneys' fees relating to the fees motion. *See, e.g.*, *Rai*, 2019 WL 1397290, at *9 ("the work Relators were required to expend to prepare this petition to protect their statutory right to fees is recoverable"). The Court applies the 2025 rates from the Fitzpatrick Matrix as the reasonable rates. The Court imposes a 30% reduction in hours as the reasonable hours expended due to the top-heavy billing. *See, e.g.*, *In re Eastman Kodak Erisa Litig.*, 213 F. Supp. 3d 503, 508 (W.D.N.Y. 2016). Partners billed 80.85 of the 103.6 hours submitted for the fees motion, associates billed no time, and a paralegal billed 22.75 hours, or around 22%.

**4. Additional Reductions**

After calculating the lodestar, a Court may adjust it only in "rare circumstances," and only based on "factors relevant to the determination of reasonable attorneys' fees that were not already considered in the initial lodestar calculation." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011).

**A. GHC settlement set-off**

Due to Relator's previous settlement regarding attorneys' fees with GHC, *see* ECF No. 191-2 at 130-137, Relator submits that the award should be reduced by

$504,798.27. ECF Nos. 191-1 at 13; 191-2 at 22. IH Defendants argue that the award should be reduced by 2% to account for the work Constantine Cannon LLP did for GHC. ECF No. 201-1 at 4. In Voldman's declaration, the request for fees for Constantine Cannon LLP was reduced by $84,828.62 "[b]ecause of the previous fee recovery" from GHC. ECF No. 191-3 at 14. In Voldman's declaration attached to Relator's reply, he explains that the $84,828.62 write-off was a component of the $504,798.27 reduction for the settlement, and was not in addition to that amount.[3] ECF No. 209-2 at 2. The Court reduces the final award by $504,798.27 to account for the settlement of attorneys' fees with GHC. *See* ECF No. 191-2 at 132 ¶ 2.

**B. Defendants' financial state**

IH Defendants argue that the Court should reduce the award because of the possibility that they will not be able to pay it. ECF No. 201 at 38–39. They establish their financial situation through the declaration of Jared Gross. ECF No. 206 (sealed document). In reply, Relator argues that ability to pay is irrelevant, especially under a mandatory fee shifting statute. ECF No. 209 at 21–23. The Court agrees that IH Defendants' financial situation is not a reason to reduce the attorneys' fees statutorily owed to Relator in this case. *See E.C., Co. v. Phila. Sch. Dist.*, 644 F. App'x 154, 157 (3d Cir. 2016) (reasoning that the defendant's "fiscal woes . . . can neither be visited upon the shoulders of these plaintiffs nor excuse the [defendant] from its statutory obligation of paying the reasonable fees here").

---

[3] In his initial declaration, Voldman stated that the award requested for Constantine Cannon LLP would be reduced to $1,541,525.13 to account for the GHC settlement. ECF No. 191-3 at 14. Hasegawa stated in his initial declaration that the request for Constantine Cannon LLP fees was $1,626,353.75, however, with the entire GHC settlement set-off coming off the total award. ECF No. 191-2 at 21–22.

## CONCLUSION

Upon careful consideration of the parties' submissions, the Court awards Relator attorneys' fees as follows:

### 1. Phillips & Cohen LLP

| Name | Exp. Level[4] | Sub. Rate | Reas. Rate | Submitted Hours[5] | Reasonable Hours[6] | Lodestar |
|---|---|---|---|---|---|---|
| Mary Inman | 18 | $1,100 | $829 | 215.8 | 151.1 | $125,228.74 |
| | 19 | $1,100 | $840 | 202.2 | 141.5 | $118,893.60 |
| | 20 | $1,100 | $850 | 92.9 | 65.0 | $55,275.50 |
| | 21 | $1,100 | $859 | 25.3 | 17.7 | $15,212.89 |
| | | | | **536.2** | **375.3** | |
| Tim McCormack | 11 | $860 | $738 | 159.1 | 111.4 | $82,191.06 |
| | 12 | $1,110 | $754 | 71.9 | 50.3 | $37,948.82 |
| | 13 | $1,110 | $768 | 23.4 | 16.4 | $12,579.84 |
| | 14 | $1,110 | $780 | 6.1 | 4.3 | $3,330.60 |
| | | | | **260.5** | **182.4** | |
| Stephen Hasegawa | 18 | $1,110 | $829 | 4.3 | 3.0 | $2,495.29 |
| | 21 | $1,110 | $859 | 33.7 | 23.6 | $20,263.81 |
| | 22 | $1,110 | $868 | 6.2 | 4.3 | $3,767.12 |
| | 23 | $1,110 | $877 | 0.2 | 0.1 | $122.78 |
| | 25 | $1,110 | $892 | 0.5 | 0.4 | $312.20 |
| | 26 | $1,110 | $897 | 50.6 | 35.4 | $31,771.74 |
| | 27 | $1,110 | $905 | 24.1 | 16.9 | $15,267.35 |
| | | | | **119.6** | **83.7** | |
| Edward Arens | 4 | $620 | $620 | 71.5 | 50.1 | $31,031.00 |
| | 5 | $650 | $639 | 1.9 | 1.3 | $849.87 |
| | | | | **73.4** | **51.4** | |
| George Collins | 1 | $540 | $561 | 10.9 | 7.6 | $4,280.43 |
| | 2 | $570 | $581 | 12.8 | 9.0 | $5,205.76 |
| | | | | **23.7** | **16.6** | |

[4] The experience levels are taken from the "experience" column of ECF No. 191-2 at 29–123 and from the positions listed in ECF No. 191-2 at 125–126. To account for historic experience, the Court uses the experience level that applied when the work was performed.

[5] The submitted hours for associates are taken from ECF No. 191-2 at 125–126. The Court calculated the submitted hours by experience levels for partners using the data from ECF No. 191-2 at 29–123 and 125–126. The totals (in bold) for each biller correspond to the totals provided in ECF No. 191-2 at 24.

[6] The reasonable hours are rounded to the nearest 1/10 of an hour.

| | | | | | | |
|---|---|---|---|---|---|---|
| Michael Dorsi | 1 | $540 | $561 | **56.5** | **39.6** | $22,187.55 |
| Julie Figuera | 1 | $540 | $561 | 4.5 | 3.2 | $1,767.15 |
| | 2 | $570 | $581 | 15.7 | 11.0 | $6,385.19 |
| | | | | **20.2** | **14.1** | |
| Marie Jonas | 1 | $540 | $561 | 363.7 | 254.6 | $142,824.99 |
| | 2 | $570 | $581 | 332.1 | 232.5 | $135,065.07 |
| | 3 | $590 | $602 | 257.8 | 180.5 | $108,636.92 |
| | | | | **953.6** | **667.5** | |
| Jonah Lalas | 2 | $570 | $581 | **122.1** | **85.5** | $49,658.07 |
| Emily Stabile | 1 | $540 | $561 | 479 | 335.3 | $188,103.30 |
| | 2 | $570 | $581 | 106.4 | 74.5 | $43,272.88 |
| | 3 | $590 | $602 | 169.2 | 118.4 | $71,300.88 |
| | 6 | $680 | $657 | 46.1 | 32.3 | $21,201.39 |
| | 7 | $700 | $675 | 1.7 | 1.2 | $803.25 |
| | 8 | $730 | $691 | 6.2 | 4.3 | $2,998.94 |
| | 9 | $760 | $707 | 1.4 | 1.0 | $692.86 |
| | 10 | $810 | $723 | 0.9 | 0.6 | $455.49 |
| | 11 | $860 | $738 | 4.3 | 3.0 | $2,221.38 |
| | | | | **815.2** | **570.6** | |
| Ari Yampolsky | 2 | $570 | $581 | **0.5** | **0.4** | $203.35 |
| Phoebe King | N/A | $270 | $255 | **11** | **7.7** | $1,963.50 |
| Janice LeBon | N/A | $270-$300 | $255 | **353.1** | **247.2** | $63,028.35 |
| Christine Zengel | N/A | $270 | $255 | **21.3** | **14.9** | $3,802.05 |
| Janice Kelly | N/A | $300 | $255 | **20.8** | **14.6** | $3,712.80 |
| TJ Budetti | N/A | $225 | $255 | **0.4** | **0.3** | $71.40 |
| Diana DeFrancesco | N/A | $380 | $255 | **3.9** | **2.7** | $696.15 |
| **Totals** | | | | 3,392 | 2,374.4 | **$1,437,081.31** |

## 2. Constantine Cannon LLP

| Name | Exp. Level[7] | Sub. Rate | Reas. Rate | Submitted Hours[8] | Reasonable Hours | Lodestar |
|---|---|---|---|---|---|---|
| Rosie Griffin | 2 | $550 | $581 | 17.25 | 12.1 | $7,015.58 |

[7] The experience levels for associates are taken from ECF No. 209-1 at 45–54. The experience levels for partners and staff attorneys are calculated for each year work was performed, as submitted in ECF No. 191-3 at 23–99, based on graduation years.

[8] The submitted hours by experience levels for associates are taken from ECF No. 209-1 at 45–54. The Court calculated the submitted hours by experience levels for partners using the time entries in ECF No. 191-3 at 23–99. The totals (in bold) for each biller correspond to the totals provided in ECF No. 191-3 at 13.

| | | | | | | |
|---|---|---|---|---|---|---|
| | 3 | $550 | $602 | 204.25 | 143.0 | $86,070.95 |
| | 4 | $650 | $620 | 147.75 | 103.4 | $64,123.50 |
| | 5 | $675 | $639 | 250.75 | 175.5 | $112,160.48 |
| | 6 | $700 | $657 | 158.75 | 111.1 | $73,009.13 |
| | | | | **778.75** | **545.1** | |
| Mary Inman | 21 (2015) | $1,450 | $859 | 31.25 | 21.9 | $18,790.63 |
| | 22 (2016) | $1,450 | $868 | 5.25 | 3.7 | $3,189.90 |
| | 23 (2017) | $1,450 | $877 | .25 | 0.2 | $153.48 |
| | 24 (2018) | $1,450 | $885 | 3 | 2.1 | $1,858.50 |
| | 25 (2019) | $1,450 | $892 | 9 | 6.3 | $5,619.60 |
| | 26 (2020) | $1,450 | $897 | .25 | 0.2 | $156.98 |
| | | | | **49** | **34.3** | |
| Molly Knobler | 4 | $550 | $620 | 63.5 | 44.5 | $27,559.00 |
| | 5 | $650 | $639 | 89 | 62.3 | $39,809.70 |
| | 6 | $675 | $657 | 10.75 | 7.5 | $4,943.93 |
| | | | | **163.25** | **114.3** | |
| Tim McCormack | 14 (2015) | $1,050 | $780 | 12.25 | 8.6 | $6,688.50 |
| | 15 (2016) | $1,050 | $795 | 61.25 | 42.9 | $34,085.63 |
| | 16 (2017) | $1,100 | $806 | 19.25 | 13.5 | $10,860.85 |
| | | | | **92.75** | **64.9** | |
| Michael Ronickher | 9 (2017) | $850 | $707 | 45.25 | 31.7 | $22,394.23 |
| | 10 (2018) | $925 | $723 | 72.25 | 50.6 | $36,565.73 |
| | 11 (2019) | $925 | $738 | 213.50 | 149.5 | $110,294.10 |
| | 12 (2020) | $1,050 | $754 | 34.75 | 24.3 | $18,341.05 |
| | 13 (2021) | $1,050 | $768 | 40 | 28.0 | $21,504.00 |
| | 14 (2022) | $1,100 | $780 | 2.5 | 1.8 | $1,365.00 |
| | 15 (2023) | $1,100 | $795 | 12.5 | 8.8 | $6,956.25 |
| | 16 (2024) | $1,200 | $806 | .75 | 0.5 | $423.15 |
| | | | | **421.5** | **295.1** | |
| Osob Samantar | 5 (2018) | $500 | $639 | 200 | 140.0 | $89,460.00 |
| | 6 (2019) | $500 | $657 | 105.5 | 73.9 | $48,519.45 |
| | | | | **305.5** | **213.9** | |
| Max Voldman | 2 | $550 | $581 | 118.25 | 82.8 | $48,092.28 |
| | 3 | $550 | $602 | 37.75 | 26.4 | $15,907.85 |
| | 4 | $675 | $620 | 3 | 2.1 | $1,302.00 |
| | 5 | $700 | $639 | 130.75 | 91.5 | $58,484.48 |
| | 6 | $700 | $657 | 38.5 | 27.0 | $17,706.15 |
| | 7 | $725 | $675 | 50.5 | 35.4 | $23,861.25 |
| | 8 | $725 | $691 | 3.25 | 2.3 | $1,572.03 |
| | 9 | $750 | $707 | 26.75 | 18.7 | $13,238.58 |
| | 10 | $750 | $723 | 6.25 | 4.4 | $3,163.13 |
| | | | | **415** | **290.5** | |
| Catie Boardman | N/A | $450 | $255 | **.25** | **0.2** | $44.63 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Jenna Bradford | N/A | $425 | $255 | **2.25** | **1.6** | $401.63 |
| Janice Kelly | N/A | $450 | $255 | **9.5** | **6.7** | $1,695.75 |
| Janice LeBon | N/A | $450 | $255 | **15.5** | **10.9** | $2,766.75 |
| Tuan Nguyen-Huynh | N/A | $425-$625 | $255 | **3** | **2.1** | $535.50 |
| Patricia O'Keefe | N/A | $450 | $255 | **1.25** | **0.9** | $223.13 |
| Catherine Tan | N/A | $450 | $255 | **3.25** | **2.3** | $580.13 |
| Ashley Williamson | N/A | $210 | $255 | **8.5** | **6.0** | $1,517.25 |
| Karen Yang | N/A | $450 | $255 | **43.75** | **30.6** | $7,809.38 |
| **Totals** | | | | 2,313 | 1,619.1 | **$1,050,821.10** |

### 3. Whistleblower Partners LLP

| Name | Exp. Level[9] | Sub. Rate | Reas. Rate | Submitted Hours[10] | Reasonable Hours | Lodestar |
|---|---|---|---|---|---|---|
| Max Voldman | 10 (2024) | $935 | $723 | 73.5 | 51.5 | $37,198.35 |
| | 11 (2025) | $935 | $738 | 1 | 0.7 | $516.60 |
| | | | | **74.5** | **52.2** | |
| Michael Ronickher | 16 (2024) | $1,050[11] | $806 | 18.25 | 12.8 | $10,296.65 |
| | 17 (2025) | $1,050 | $818 | .75 | 0.5 | $429.45 |
| | | | | **19** | **13.3** | |
| Karen Yang | N/A | $460 | $255 | **5.25** | **3.7** | $937.13 |
| **Totals** | | | | 98.75 | 69.1 | **$49,378.18** |

[9] The experience levels for the two partners are based on the years the work was performed, as submitted in ECF No. 191-3 at 101–104, compared to graduation years.

[10] The Court calculated the submitted hours by experience levels using the time entries in ECF No. 191-3 at 101–104. The totals (in bold) for each biller correspond to the totals provided in ECF No. 191-3 at 14, with the exception of the grand total of 98.75 hours. Table 2 incorrectly lists the total hours submitted as 68.75. *See* ECF No. 191-3 at 14.

[11] Ronickher's submitted rate for Whistleblower Partners LLP is listed as $1,050, ECF No. 191-3 at 14, but the itemized bills reflect a rate of $1,150, ECF No. 191-3 at 101–104.

### 4. Fees on Fees

| Name | Exp. Level[12] | Sub. Rate | Reas. Rate | Submitted Hours[13] | Reasonable Hours | Lodestar |
|---|---|---|---|---|---|---|
| Stephen Hasegawa | 27 | $1,110 | $905 | 53.6 | 37.5 | $33,955.60 |
| Max Voldman | 11 | $935 | $738 | 27.25 | 19.1 | $14,077.35 |
| Karen Yang | N/A | $460 | $255 | 22.75 | 15.9 | $4,060.88 |
| **Totals** | | | | 103.6 | 72.5 | **$52,093.83** |

The combined total attorneys' fees award, including the fees for the fees motion, is $2,589,374.42, minus the amount Relator received from the GHC settlement ($504,798.27), for a final award of $2,084,576.15. The Court concludes that the final amount is both reasonable and generous.

Therefore, it is hereby

ORDERED, that Relator's motion for attorneys' fees is GRANTED IN PART. Relator is awarded $2,084,576.15 in attorneys' fees from IH Defendants.

SO ORDERED.

Dated: September 29, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

[12] The experience levels for the two partners are based on the years the work was performed, as submitted in ECF Nos. 209-1 at 35 and 209-2 at 10, compared to graduation years.

[13] The submitted hours for each biller are from ECF Nos. 209-1 at 6, 35, 50, 54 and 209-2 at 10.